## Kellogg & Company v. Louisville & Nashville Railroad Company.

(Decided May 6, 1915.)

### Appeal from Madison Circuit Court.

Railroads—Crossings—Ordinary Care—Duty to Stop or Check Train.—An instruction relieving those in charge of a train when

approaching a frequently traveled road crossing of the duty of stopping or checking its speed, unless they saw, or by the exercise of ordinary care could have seen, that those approaching the track over the public road intended to cross the track, and did not know of the approach of the train, was not erroneous because it failed to condition this relief with the requirement that the speed of the train must be at the time under reasonable control, because any error was cured by the first instruction which required those in charge of the train to exercise such care to avoid collision as ordinarily prudent persons usually exercise under similar circumstances, and because the evidence in this case does not show a failure to have the train under reasonable control as a cause for the collision.

W. B. SMITH and GREENLEAF & HERRINGTON for appellant.

BURNAM & BURNAM, BENJAMIN D. WARFIELD and SHELBY, NORTHCUTT & SHELBY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellant is a wholesale grocery concern, and was the plaintiff below. It uses an automobile truck in hauling goods to neighboring towns. On November 18th, 1913, this truck, occupied by Chase, the driver, and a helper, was returning to Richmond from Lancaster. The pike crosses the L. & N. Railroad 250 feet from the station at Paint Lick, a village of two or three hundred inhabitants on the Garrard and Madison County line. At this point there was a collision between the truck and the engine of a moving passenger train. It cost appellant $1,357 to repair the truck to its former condition. Appellant sued to recover this sum, alleging that the injury to the truck was due to the carelessness and negligence of those in charge of the train. The train was running some 40 minutes late; the customary station whistle had been blown; and from that time the bell was ringing continuously until the collision. One hundred or more feet from the track was the foot of a long hill which the pike descended, and in coming down this hill one gets a view of the railroad for a distance of twelve or fifteen hundred feet north and south. The occupants of the truck were seated in a hood or canopy covering. Coming down the hill they looked each way, and there was no sign of a train. Reaching the foot of the hill, the pike, for more than 100 feet, approached the track at right angles over level ground. The truck was running slowly—about four or five miles an hour; 30

or 40 feet from the track, or just about the line of the right-of-way, a mule team hitched to a wagon occupied a part of the road, and the truck had to pull out of the way of this wagon. Then, without hearing the train, they approached the track at about the same speed; the occupants say they looked south and saw no train, and that just as they were about to look north, they were on the track, and this train coming from the north collided with it, and knocked the motor off the track. The occupants of the motor were rendered unconscious, but it seems, from this record, that they were not seriously hurt. Those in charge of the engine sounded the danger whistle when in 30 feet of the crossing, and the train was brought to a stop in less than its length. The engine was near the station and the last car was over the crossing. The engine rounded a curve and came out of a cut about 250 feet from the crossing. The fireman, on the left side, at about this time observed the motor truck traveling slowly along the level piece of pike leading from the foot of the hill. The engineer from his position could not see the pike. While the fireman could not see the occupants of the truck, on account of the hood or canopy top, he thought, of course, from the control under which it was proceeding, that the occupants knew of the approaching train, and the fact that the truck was coming closer to the track than would be expected of a horse-drawn vehicle, did not, in view of its slow speed, cause him to doubt that they would stop at a point of safety. When in about 40 feet of the crossing, and fearing that the occupants of the motor would attempt to run it across the track, the fireman shouted an alarm to the engineer, and quick blasts of the whistle were sounded and the air brakes applied. Their efforts to drive around the mule team in the narrow pike, and the noise of the truck undoubtedly prevented its occupants from hearing the bell and noise of the train. There is no controversy about any of the foregoing facts.

Marks on the side of the engine afford ground for appellee's contention that the engine reached the crossing first, and that the truck ran into it.

A number of witnesses testified that the train was approaching the station faster than usual. This was denied by other witnesses. The jury returned a verdict for the railroad company.

Appellant's criticism is directed at the instructions and particularly at instruction No. 4, or rather it is insisted that the alleged error in No. 4 is not cured by the other instructions. Instruction No. 1 is in substantially the same language as that approved in the case of Southern Railway Co. v. Thacker, 156 Ky., 485. The jury were told, in substance, that it was the duty of those in charge of the train to give reasonable and timely notice and warning of the approach of the train to the pike crossing, and to exercise such care to avoid collision as ordinarily prudent persons usually exercise under similar circumstances.

The second instruction was a converse of the first.

No. 3 instructed the jury that it was the duty of appellee's truck driver to use such care in approaching the railroad crossing as persons of ordinary prudence would usually exercise under similar circumstances to learn of the approach of the train and keep out of its way, and if they believed from the evidence that the driver failed to exercise such care, and but for the failure the collision would not have occurred, they should find for defendant, unless they believed those in charge of the train, saw, or by the exercise of ordinary care could have seen, that those in the truck did not know of the approaching train, and intended to cross the track, and those in charge of the train then failed to use such means as were within their power to stop the train and avoid the collision.

The fifth instruction defined the measure of damages.

Instruction No. 4 is as follows:

"The persons in charge of the train were under no duty to stop or check it unless the conduct of the persons in charge of the truck, when the persons in charge of the train saw, or by the exercise of such care as persons of ordinary prudence usually exercise under similar circumstances could have seen, the truck, was such as to lead an ordinarily prudent person to believe that the persons in charge of the truck did not know of the approach of the train and intended to cross the track; but it was their duty to use such means as were within their power to stop the train when they saw, or by the exercise of such care as persons of ordinary prudence would

usually exercise under similar circumstances could have seen, that fact, if the jury believe it to be a fact from the evidence in this case.''

This instruction is substantially that given and approved in the case of Bauer v. I. C. R. R. Co., 156 Ky., 183; Hummer v. L. & N. R. R. Co., 128 Ky., 486.

But appellant argues, and correctly so, that those in charge of a train coming into a populous village and approaching a frequently traveled road crossing, should exercise ordinary care to have the train under reasonable control. It says the court should have instructed the jury that those in charge of the train were under no duty to stop or check it on seeing plaintiff's truck approaching the crossing, *provided the train was already running under reasonable control,* unless they had reason to know that plaintiff's driver was not aware of the approach of the train, etc. In this connection appellant attempts to distinguish it from the Bauer case by calling attention to instruction No. 1 in that case, which told the jury that ''It was the duty of the defendant's engineer in charge of the engine in operating it to exercise ordinary care to have it *under reasonable control.*''

But the same idea is expressed in the case at bar by the requirement of those in charge of the train, ''to exercise such care to avoid such collision as persons of ordinary prudence would usually exercise under similar circumstances.'' As said in the Thacker case, this instruction submitted to the jury the question, ''Whether the means employed (precautions, speed and warnings given) were reasonably sufficient under the circumstances of the case, and considering the nature of the crossing, and the physical conformation of the country surrounding it.''

The court could very properly have conditioned instruction No. 4 with a requirement that the speed of the train should be under reasonable control. But we do not believe that the failure to do so was prejudicial error. This accident would have occurred independent of any unreasonable rate of speed. Had the train been running at a rate of speed admittedly proper, under the circumstances, it would have collided with the truck anyhow, for it could not have stopped in a distance of 40 feet— this was where it first seemed likely that the truck would be driven on the railroad track. It is manifest from all

the facts that this collision was due to a cause other than excessive speed—either the failure of the trainmen to give timely and sufficient warning, or else, as the jury found, the negligence of those occupying the truck. These questions were submitted to the jury under proper instructions, and we do not see sufficient cause for disturbing their verdict, or directing a reversal.

The judgment is, therefore, affirmed.