## Louisville & Interurban Railroad Company and Louisville Railway Company v. Cantrell.

(Decided May 4, 1917.)

'Appeal from Jefferson 'Circuit Court
(Common Pleas Division, No. 2).

1. Railroads—Accidents at Crossings—Signals.—An interurban railroad is under the same duty as steam railroads to sound road crossing signals, as provided by section 786, Kentucky Statutes, and where the railroad establishes a custom to sound road crossing signals at a private crossing, it may not discontinue the custom without due notice to the public, without incurring liability for resulting injury.

2. Railroads—Use of Private Way by Public.—The establishment of a station or depot for the reception of passengers and freight to be carried for hire at the intersection of an interurban railroad with a private pike amounts to an implied invitation to the public to make use of the pike, and it will not lie with the railroad company to deny its public nature.

STRAUS, LEE & KRIEGER for appellants.

H. N. LUKINS and EUGENE HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted in the Jefferson circuit court by William A. Cantrell against the appellants, Louisville & Interurban Railroad Company and the Louisville Railway Company, to recover damages for a personal injury suffered by him as a result of a collision between an automobile which he was driving and an electric interurban car operated by the appellants. The accident happened at a road crossing at Woodside station, in Jefferson county. This is outside the corporate limits of the city of Louisville.

The appellee, Cantrell, was in the employ of a telephone company as trouble man, making repairs of telephones and connections. On the day in question he was called to a residence near Woodside to make a repair of a telephone. In his work it was necessary for him to carry with him a kit of tools, batteries, and other sup-; plies, and in doing this he employed a runabout Ford automobile. The main highway ran parallel with the interurban line, but some two or three hundred yards distant therefrom. After he had left the residence at which

he had repaired the telephone, he drove down the main highway to the road in question, which crosses the interurban line at right angles and on grade at Woodside, and turned into this road. When he came within twenty or thirty feet of the track of the interurban, according to his testimony, he stopped his machine, sounded the horn, and looked and listened to see whether an interurban car was approaching. A stone wall and trees in full leaf obstructed his view in part, but he could see some two hundred to four hundred feet along the tracks. Not seeing or hearing a car or signals for the crossing, he proceeded on his way, and just as he was in the middle of the track he observed for the first time the interurban car very near him, running at a high rate of speed. The interurban car struck the automobile broadside between the wheels, knocking the Ford some 75 or 80 feet and completely demolishing it. The appellee, Cantrell, was under the wreck at the finish, but was able to crawl out without assistance. He, however, suffered a severe injury, and instituted this action to recover damages.

Upon a trial of the case for the injury to his person in the circuit court a jury awarded him $650.00. The automobile belonged to the telephone company, and the damage to it is not included in this verdict. The trial court overruled the motion and grounds of the companies for new trial, and they prosecute this appeal. The chief ground relied upon for a reversal of the judgment is the failure of the trial court to sustain the motion of appellants for a peremptory instruction made at the conclusion of the evidence for plaintiff, because, as the railroad insists, the crossing was not a public road, but only a private way, and this being true, no lookout duty or crossing signals were required of it.

It is insisted that an operator of an interurban car is not required to keep a lookout in the country at a private road crossing for persons or vehicles upon the track, and the case of L. & N. R. R. Co. v. Engleman, 135 Ky. 521, is relied upon. Appellants also insist that an interurban line in the country is upon the same basis as steam railroads, and this is admitted. The crossing in question, strictly speaking, was not a public highway, measured by the general rule in such cases, but it is a road established some forty-two years prior to the accident by private citizens for their own use. Later on it was macadamized at the expense of the individuals living in that immediate vicinity. However, for a number of years

next before the accident this road was common to the public, and was used generally by all persons desiring to travel it, without let or hindrance from anyone, and this was well known to those operating the interurban cars.

At the instant of the accident the evidence shows that in addition to the automobile passing that way, several other persons were approaching this same crossing, some from one side and some from the other. At the intersection of the interurban and the highway the railroad company had located its station, Woodside, at which it received both passengers and freight. The only approach to this station, except along the tracks, was over this road, which the railroad now insists was a mere private passway.

It is also shown in evidence that at the instant of the accident freight was being unloaded on to the platform of this station to be carried by the railroad for hire. The motorman operating the interurban car testifies that it was the custom and habit of the company in operating cars along that line to sound the usual crossing signals at proper distances, as required by statute, as cars approached this crossing, and that upon this particular occasion, he, as motorman, gave the usual signals at the proper distance as he approached the crossing.

It is a well settled rule in this jurisdiction that a railroad company may run its trains at such speed as suits its convenience over private crossings, and that it is not required to give notice of the approach of trains to such crossings unless it has been customary for the signals to be given. Johnson v. L. & N. R. R. Co., 91 Ky. 651; Louisville Ry. Co. v. Survant, 96 Ky. 197; Davis v. C. & O. Ry. Co., 116 Ky. 114; Hoback v. Louisville, Etc. R. R. Co., 99 S. W. 241.

It is also a well established rule that where it has been customary for signals to be given of the approach of trains to a private crossing, and these are relied upon by persons using the crossing, and a traveler on the crossing is struck by reason of a failure to give the customary signals, a recovery may be had. L. & N. R. R. Co. v. Bodine, 109 Ky. 509; Early's Admr. v. Louisville, Etc. R. R. Co., 115 Ky. 13.

In this case, while the motorman and other trainmen testify that the signals for the crossing were given in due time, the plaintiff, Cantrell, and his witnesses contradict this and say that no such signals were given. The railroad companies, however, do not concede that it was

the custom to sound crossing signals for this crossing, but the weight of the evidence is to the effect that signals were customarily given as the cars approached this crossing.

In the case of L. & N. R. R. Co. v. Engleman's Admr., 135 Ky. 522, where the evidence for the plaintiff tended to prove that it was the custom to sound crossing signals, and the evidence for the company conduced to prove the contrary, this court said:

"But there was in this case evidence that the trains failed to whistle or give any signals for the crossing as often as they gave such signals. In view of this evidence, it was a question for the jury whether the custom of giving signals for this crossing prevailed to such an extent that persons using the crossing had a right to rely on the signals being given. It is not material that some trains passed this crossing without giving the usual signals, for some trains fail to give signals at public crossings. The case turns on whether there was such a custom to give the signals that persons using the crossing had the right to rely on it."

In the instant case, the appellee, Cantrell, from his testimony, relied upon the custom of giving signals, because he testified that before driving on the crossing he stopped his automobile and looked and listened for approaching cars, and seeing none, and hearing none, proceeded on his way. While there is some evidence tending to contradict the statement of appellee on this point, yet this was for the determination of the jury from all the evidence, as is likewise the question of whether it was the custom of the company to sound the crossing signals at the place in question.

The establishment of the depot or station by the railroad company at the intersection of this crossing was an implied invitation by the company to the public to travel this road, and it would not reasonably lie with the company to now gainsay this right.

In the recent case of Louisville & Interurban R. R. Co. v. Morgan, 174 Ky. 633, where this exact question was under discussion, the court said:

"It does not appear who constructed the macadam road leading from the pike, a distance of about 40 feet, to the crossing. The shelter house at the station is on the other side of the railroad tracks from the pike, immediately beside the macadam road and the crossing, and there appears to be no other way from the turnpike to

the station for the public, except over the macadam road and the crossing. Since the station is situated between the railroad tracks and Morgan's fence, there is no way for persons who propose to use the cars of appellant to get to them, except from the side upon which the turnpike is, and over the macadam roadway and crossing, and persons alighting from the cars at the station must depart over the crossing. If freight is brought to or carried away from the station, or vehicles used by persons who come and go therefrom, the vehicles are obliged to pass over the crossing. Thus it is, that the appellant (railroad company) has not only acquiesced in the use of the crossing by the public, but has invited them to make use of it. The rural community surrounding the station is populous, and hence it may be inferred that the use of the crossing has been and is considerable. . . . Of course, the appellant cannot invite the public to make use of the crossing, and then give no heed for their safety while doing so. The use for which appellant created the crossing impressed it with a public nature, and the ones operating appellant's trains had the duty imposed upon them to anticipate the presence of persons and vehicles upon the crossing, and to take and maintain such reasonable precautions for their safety as the situation demanded, and such as are usual in such cases.''

Complaint is also made that the court improperly instructed the jury as to the law of the case. The circuit court proceeded upon the idea, in its instructions to the jury, that the evidence established the public use of this road and required the railroad company in the operation of its cars to keep a reasonable lookout ahead at Woodside station and crossing for persons or vehicles upon the track.

The facts all considered, we are of the opinion that the trial court committed no prejudicial error, because it was the duty of the railroad company, in a case like this, where the presence of persons upon or near the track is to be anticipated by reason of the general traffic on the road, no less than by the implied invitation extended by the railroad to the public when it established a station or depot at the intersection of the interurban and pike, to travel the road and be upon and near the crossing, to keep a reasonable lookout ahead at such place, and to operate its cars at such rate of speed and have them under such control as to render the crossing reasonably safe for the traveling public.

An instruction in almost the exact language as the one complained of in this case was given in the case of the Louisville & Interurban Railroad Company v. Morgan, 174 Ky. 633, and this court expressly approved it.

The evidence of appellee, Cantrell, shows that he exercised every reasonable precaution before going upon the track, and the jury accepted his version of the accident. The facts considered, the verdict is small. The appellee, Cantrell, was knocked some 70 or 80 feet by the collision, and suffered not only a severe nervous shock, but much physical hurt, and was unable to pursue his regular employment for many weeks. In addition to this, the evidence tends to show that his hearing is impaired, and the sight in his right eye defective as a result of his injury. Upon the whole, the verdict for $650.00 cannot be said to be unreasonable.

Judgment affirmed.