## Louisville & Interurban Railroad Company v. Clore.

(Decided February 14, 1919.)

### Appeal from Oldham Circuit Court.

1. Railroads—Injuries to Persons on Track—Lookout—Instructions. —Where the public with the knowledge and acquiescence of the railroad company have continuously used its track for a long period of time, in populous and thickly settled communities, the presence of persons on the track where it is so used must be anticipated by the company in running its trains, and it owes to such persons the duty of keeping a lookout and giving warning the same as is required at public crossings, and if a person

is injured at such point by a failure to give warning or keep a
lookout, a recovery may be had unless the contributory negligence
of the person injured is such as to defeat it, and this question
should be submitted to the jury on proper instructions.

2. Railroads—Crossings—Lookout.—A railroad company is not ex-
empt from liability for damages inflicted at a private crossing
·where the crossing is in a town and at a place where the pres-
ence of persons on the track is to be anticipated, and which
crossing is used daily by a great number of people, since at such
places the company is required to keep a lookout and to
give reasonable warning of the approach of the train to the
crossing.

·3. Trial—Evidence—Verdict.—Where the evidence is conflicting, it
is the duty of the jury·to·reconcile it and find the fact, and it
is improper in such cases for the court to determine the fact
by directing the jury to return a particular verdict.

4. Damages—Excessive Damages.—Where plaintiff by a collision
with a train was thrown about 25 feet and sustained bruises to
different parts of his body, a fracture of his elbow and a wrench-
ing of his back, and was made to suffer considerable pain and dis-
abled from work for several months, a finding in his favor for
$650.00 will not be set aside as excessive.

WILLIS, TODD & BOND for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

About nine o'clock on the morning of February 26,
1917, appellee and plaintiff below, C. P. Clore, was at-
tempting to drive across the track of the appellant, Louis-
ville & Interurban Railroad Company, in the town of
Crestwood, Oldham county, when an east bound car of
defendant collided with his buggy, destroying it and
throwing plaintiff some twenty feet or more beyond the
crossing and into the pike running parallel with the
railroad track. He brought this suit seeking damages
for the injuries he sustained which he alleged were due
to the negligence of the defendant in carelessly operating·
its car as it approached the crossing and in failing to give
signals of its approach to the crossing. The negligence
was denied by the answer and a plea of contributory neg-
ligence was interposed. Upon trial the jury returned
a verdict in favor of plaintiff for the sum of $650.00,
upon which judgment was rendered, and complaining of
it the defendant prosecutes this appeal.

Only two grounds for reversal are urged before us,
they being (1) that defendant's motion for a peremptory

instruction should have been sustained because, it is insisted, the evidence fails to show any negligence on the part of defendant but does show negligence on the part of plaintiff.    (2) That the verdict is excessive and is contrary to the evidence.

Considering the contentions in the order named: (1) It appears that Crestwood is a town with a population ranging from one hundred to four hundred people, located in a densely populated community. The tracks of the defendant and those of the Louisville & Nashville Railroad Company run parallel through the town east and west at a distance of perhaps one hundred feet apart. Just north of the track of defendant is the pike and about 450 feet east of defendant's station in the town and just south of its track is a large, two-story building used as a creamery. The west end of the creamery building is about ten feet from defendant's track, while its east end is only about four and one-half feet from the track. It is not shown which was located first, the creamery building or defendant's track, both having been used and operated as now located for something more than twelve years. A road or passageway crosses defendant's track from the pike at the west end of the creamery building, extends around it and again crosses the track at its east end. Those who make deliveries of milk or cream enter this passageway at either end, go around to the rear of the creamery, where their product is unloaded, and pass out at the other end of the passageway.

On the morning in question plaintiff had crossed the track at the west end of the creamery building, delivered his milk, and had started to leave the creamery over the passway at the east end, when the collision occurred. It is shown that these passways have been used in the manner indicated by at least fifty or more people each day since the creamery was established. Other people have occasion to use them in going to and from a lumber yard, a residence, and a picture show building, all located between the tracks of the defendant and that of the Louisville & Nashville Railroad Company. Under these facts and circumstances there can be no doubt but that defendant's duties in running its cars over the two crossings mentioned are measured by the rule laid down in the cases of Davis v. Louisville, Henderson & St. Louis Ry. Co., 30 Ky. Law Rep. 172; Same v. Same, 32 Ky. Law Rep. 580; Louisville & Nashville Ry. Co. v. Mc-

Nary's Admr., 128 Ky. 408 and C. & O. Ry. Co. v. War-nock's Admr., 150 Ky. 74, and cases therein referred to. That rule as stated in the Davis case is:

"Appellant was not a trespasser at the time and place she received the injury; if she had been the company would owe her no lookout duty, nor would it have been required to give warning of the approach of its engines, and would owe no duty except to exercise ordinary care to prevent injury, after she was actually discovered in a place of peril. But, as has been frequently held by this court, where the public, with the knowledge and acquiescence of the railroad company, have continually used its tracks for a long period of time, the presence of persons on the track at the point where it is so used must be anticipated by the company in running its trains, and it owes to the persons thus habitually using its right of way the duty of giving warning and keeping a lookout, substantially the same as is required at public crossings; and if a person is injured at such point by the failure of those in charge of the train to give warning of its approach, or keep a lookout, a recovery may be had, unless the contributory negligence of the injured person is such as to defeat it. McCabe v. Maysville & Big Sandy R. Co., 28 Ky. Law Rep. 536; L. & N. R. R. Co. v. Daniel, 28 Ky. Law Rep. 1146; L. & N. Railroad Co. v. Redmond, 28 Ky. Law Rep. 1293; K. & I. Bridge Co. v. Sydnor, 26 Ky. Law Rep. 951; Wilmouth v. I. C. R. R. Co.. 25 Ky. Law Rep. 671; Eskridge v. C. N. O. & T. P. Ry. Co., 89 Ky. 367; Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 41; Cahill v. Cincinnati R. Co., 92 Ky. 345; Shelby v. C. N. O. & T. P. R. Co., 85 Ky. 224; Illinois Central R. R. Co. v. Murphy's Admr., 30 Ky. Law Rep. 93."

In the McNary case the accident occurred in the town of Barnsley, which has a population of four or five hundred inhabitants, while the plaintiff was attempting to cross defendant's track over a path which was not a public street but over which from fifty to one hundred people passed each day, and this court held that it was such a place as required those in charge of and operating the train producing the injury to anticipate the presence of persons and to moderate the speed of the train accordingly, keep a lookout and give notice and warning of the approach of the train "as the circumstances demand for the proper security of human life." None of the cases hold that such precautionary methods are required in *rural communities*, but only in places where the population is

dense and the presence of persons upon the track is to be anticipated, and the presence of persons is to be anticipated where under a license from or with the acquiescence of the company its track is used in such communities by a goodly number of people each day.

Under this doctrine there can be no doubt that it was the duty of the defendant in approaching the crossing where the injury occurred in the instant case to keep a lookout for the approach of persons upon the track and to give such reasonable warnings and signals as would be calculated to notify travelers of the approach of the train. And this, according to the proof, seems to have been defendant's understanding of its duties, for it is shown that it has constantly observed the custom of giving signals for the approach of cars at this particular crossing. Louisville & Interurban R. Co. v. Morgan, 174 Ky. 633. According to the proof it maintained a lookout on this occasion but did not see the approach of plaintiff from behind the creamery until the car was within ten or fifteen feet of the crossing, which was too late to stop in time to avoid the collision.

There is considerable contradiction in the proof as to whether it gave any signals for that crossing. Plaintiff testified that he looked to discover the approach of cars from the east and listened for the approach of a car from the west but heard no signals. Some half dozen or more witnesses in the immediate vicinity of the crossing and the station testified that they heard no signal, although they were located so as to have heard them if any had been given. We think this evidence, although negative in its character, and admissible—as has been many times determined by this court—was sufficient, with plaintiff's testimony, to authorize a finding by the jury that no signal was given, and if not the defendant violated its duty as required by the rule of the cases, *supra.* In arriving at this conclusion we have not overlooked the fact that some four or five witnesses who were upon the car which collided with plaintiff testified positively that the whistle was blown about 200 feet from the crossing, and that the bell also rang from that point to the crossing.

But it is insisted that since the creamery building obstructed plaintiff's view he was guilty of negligence in going upon the track. This court has never adopted the "stop, look and listen" doctrine as applied to the traveler over grade crossings; but if that doctrine did apply in

this state plaintiff could not see in the direction from whence the car came until he had passed the corner of the creamery building but could exercise his other faculty of listening, which he says he did, and no one contradicted him. The fact that plaintiff's horse was traveling in a slow trot as he came from behind the building and as he approached the track can not be an act of negligence on his part, since that fact could in no way contribute to his injury. The court submitted to the jury the issues of plaintiff's negligence and defendant's contributory negligence by instructions aptly drawn, and of which no complaint is made. The most that can be said is that upon those issues there was a contrariety of testimony, and under the rule of practice in this state it is preeminently the duty of the jury in such cases to reconcile the testimony and return its verdict according to its finding of fact. That finding in this case upon each of the contested issues was warranted by the testimony, and it was not error for the court to refuse the offered peremptory instruction.

In regard to the (2) contention—that the verdict is excessive and is contrary to the evidence—it appears that plaintiff was knocked a considerable distance, falling upon his left hip in the middle of the hard pike, which inflicted a painful bruise upon his hip, hurt his back and caused a fracture of one of his elbows. He contracted a physician's bill of $50.00, and was sore and nervous for quite a while after the accident. His injured limbs at the time of trial were smaller than the others. For years he had been suffering with a curvature of the spine, commonly known as Pott's disease, and there is testimony that this trouble was aggravated, which condition prevented plaintiff from doing work which he had theretofore been able to do, as well as producing additional and more severe pains.

It is sometimes a difficult matter to determine whether a verdict is excessive, and this court has adopted the rule that unless the verdict returned by the jury is so excessive as to appear to have been returned under the influence of passion or prejudice, it will not be disturbed. We are not prepared to say in this case that the verdict was returned under those circumstances. What we have thus far said relates only to plaintiff's physical injuries. The jury had the right to take into consideration, as directed by the instruction, the mental anguish which plaintiff suffered, in addition to his physical injuries,

and when all these matters are considered we do not think the verdict should be disturbed as being excessive.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment must be and it is affirmed.