# CHARLESTON.

WILSON KIRK *v.* WILLIAMSON AND POND CREEK RAILROAD COMPANY.

(No. 5230)

• Submitted September 30, 1925.   Decided October 13, 1925.

1, RAILROADS—*Under Kentucky Law Railway Company, Without Special Authority, Cannot, by Lease, Absolve Itself From Liability to Third Persons For Negligent Aspiration.*

Under the laws of Kentucky, a railway company, without special authority, cannot by leasing its property to an operating company, absolve itself or its property and franchise from liability to third persons observing due care for their own safety, for the negligent operation of engines and cars over its road through populous communities or at public or private crossings, where such persons are likely to be using the same.   (p. 111.)

(Railroads, 33 Cyc. p. 703.)

2. SAME—*Under Kentucky Rule, Contributory Negligence in Entering on Track Without Looking is Generally Question for Jury.*

In Kentucky the rule requiring one about to go upon the track of a railway company to stop, look and listen at public crossings has not been adopted; and whether one who has entered upon a railway track at a public or private crossing in a populous community and been injured by the negligence of the railway company has been guilty of contributory negligence, is generally a question of fact for the jury, and not one of law for the court.   (p. 115.)

(Railroads, 33 Cyc. p. 1117.)

3. SAME—*Under Kentucky Rule, Negligence of Person Relying on Crossing Signal is Question of Fact for Jury.*

In Kentucky an employee of a coal company about to make use of a railway company's track in a populous community

and at a private crossing maintained by the railway company for the use of the coal company and its employees, has the right to rely on the railway company's blowing the whistle at the proper whistling post for a public crossing; and when the railroad company omits to perform its duties respecting such crossing, and the employee using the track at such private crossing is injured in consequence thereof, the question whether he has failed to observe due care for his own safety and been guilty of contributory negligence, is one of fact for the jury, and not of law for the court.   (p. 115.)

(Railroads, 33 Cyc. p. 703.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by Wilson Kirk against the Williamson & Pond Creek Railroad Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Holt, Duncan & Holt,* for plaintiff in error.
*Bias & Chafin,* for defendant in error.

MILLER, JUDGE:

In an action against defendant for personal injuries sustained, plaintiff recovered a verdict and judgment for $5,000.00.

The cause of the action is that, being the owner, proprietor and operator of a railroad extending from the city of Williamson in this state, to the village of Hardy, in Pike County, Kentucky, the defendant company, at and near the village of Peg, on said railroad in said Pike County, so carelessly, negligently and improperly behaved and conducted itself in and about the management, control and direction of its locomotives, engines and cars, that the same, by and through the default, carelessness, negligence and improper conduct of its servants and employees, were driven with great force and violence against plaintiff, whereby he then and there sustained severe, serious and permanent injuries, and by reason whereof he also suffered continuously great pain, and for which he laid his damages at $20,000.00.

Issue was joined on defendant's only plea of not guilty, with the result already indicated; and the defendant sued out the present writ of error.

Numerous propositions, more or less involved in one another, are advanced by defendant's counsel to reverse the judgment; the first of which is that the circuit court, as requested by defendant's instruction number one, should have peremptorily instructed the jury to return a verdict for defendant. In support of this proposition reliance is had upon the fact that, while the defendant company is the owner of the railroad and its franchise, the property at the time of the alleged injury was being operated by its lessee, the Norfolk & Western Railway Company, the owner of the locomotives, engines and cars operated over said railway, and that the defendant company had no part therein. It is practically conceded that but for the provisions of section 203 of the constitution of the State of Kentucky, and the decisions of its courts in reference thereto, the defense would be complete. The section referred to is as follows: "No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges."

It seems to be settled law in Kentucky that a railway company can not, by a lease of its corporate property and franchise, relieve itself of its duties and obligations to the public, without express authority exempting it therefrom. *McCabe's Adm'x* v. *Maysville & B. S. R. Co.* (Ky.) 66 S. W. 1054; *Lee* v. *Railroad Co.* (Cal.) 58 Am. St. Rep. 152, note; *Illinois Central R. R. Co.* v. *Sheegog's Admr.*, 126 Ky. 252, 103 S, W. 323.

Whether the provision of the Kentucky constitution involved renders a lessor company liable for injuries inflicted by the lessee on its own servants in the operation of the railway property in the manner shown in the case at bar, we need not decide. The decisions in Kentucky would seem to hold the lessor not liable for such injuries; the reason in part at least being that the relationship of employee to em-

ployer in such cases is contractual, and the rights of the parties controlled by the contract. *Swice's Admr'x* v. *Maysville & B. S. R. Co.*, 116 Ky. 253, 75 S. W. 278.

The plaintiff in this case was not an employee of the lessee company, but a member of the general public; and his rights must be governed by the law applicable thereto. With respect to the public or third persons the law is settled in Kentucky that the lessor company can not discharge its duties by leasing its property to another company. *Raikes* v. *Payne* (Ky.) 249 S. W. 1020; *Clinger's Adm'x.* v. *C. & O. Ry. Co.*, 128 Ky. 736, 109 S. W. 315. The case here must be determined by the laws of Kentucky, because plaintiff's injuries were sustained there. But the law of this state independently of any statutory regulations seems to be the same. *Ricketts* v. *C. & O. Ry. Co.*, 33 W. Va. 433, 10 S. E. 801; *Fisher* v. *West Va. & Pittsburg Railroad Co.*, 39 W. Va. 366, 19 S. E. 578. And the same law obtains in the courts of the United States. *Thomas* v. *West Jersey Railroad Co.*, 101 U. S. 71, 25 Law Ed. 950. The case of *Harper* v. *Newport News & Mississippi Valley Company*, 90 Ky. 359, decided in September, 1890, cited and relied on by defendant's counsel, in so far as it is opposed to the proposition affirmed in *McCabe's Adm'x.* v. *Maysville & B. S. R. Co.* and the subsequent cases cited, is disapproved, if not overruled, and distinguished in the later cases. The main question in that case was the right of one of the defendants to remove the case to the federal court.

The other propositions contended for by defendant involve the question of plaintiff's contributory negligence, and the giving and refusing of instructions based on the respective theories of the parties as to what the evidence on the trial showed or tended to show. The plaintiff at the time of his injuries was a carpenter employed with others by a coal company operating at or near the village of Peg, in Pike County, Kentucky, to repair the coal company's tipple at that point. Plaintiff was struck by one of the engines of the lessee company as he and another carpenter attempted to cross the railway company's main tracks to get to a tool box located on the opposite side of the track to the one on which he and the

other carpenters had assembled preparatory to beginning their work. They were standing under the tipple about twelve feet from the main line track when plaintiff started to cross the track. The tipple was about 179 feet from Peg station, a mining village consisting of some eighty miners' houses, with a population on the average of about five persons to each house. There was a private crossing maintained by the employees of the railway company near the tipple, over which the evidence tends to show from a hundred and fifty to two hundred persons passed daily. The track was straight on both sides of the tipple for several hundred feet. There was a public road crossing about .950 feet down the creek from the place of the accident. A whistle post stood about 1540 feet above the tipple; and the evidence tends to show that a person on the track at the tipple could have been seen by a lookout on the train for a distance of about 864 feet. The tipple, which measured some eighty feet along the track, at its nearest point was about seven feet from the track and ran back towards the hill about 111 feet from the track. The tipple over the track stood upon bents or posts from 12 to 16 inches square, the distance from which to the railroad tracks was about seven feet. And it is claimed by defendant that plaintiff in his attempt to cross the track stepped from behind or between these bents unobserved by the enginemen so suddenly that the engine which struck him could not have been controlled or stopped in time to avoid the accident.

Plaintiff relies on the alleged negligence of the enginemen in failing to ring the bell or sound the whistle at and from the tipple and the crossings above and below the tipple, to give warning to persons about to cross the track, as required by the laws of Kentucky, particularly in populous communities, where, it is argued, pedestrians on a railway company's tracks are regarded, not as mere trespassers, but with the rights of licenses thereon and entitled to all the protection which the laws of Kentucky impose upon railway companies with respect to such persons. On the other hand the railway company denies negligence on its part, also relies on the contributory negligence of the plaintiff in going on the track while in

the enjoyment of all his senses of sight and hearing without the employment thereof·for his personal protection.

That there was evidence in the case on which the jury were justified in finding the defendant negligent, is a proposition which was not controverted on the hearing. The ground on which the defendant mainly relies for reversal, so far as the facts are concerned, is that the plaintiff was himself so negligent as to deny him the right of recovery against the defendant. Whether the whistle was sounded at tipple number 6 on the way to tipple number 5, where the accident occurred, or at the whistle post above the tipple, or the bell rung on the way, so as to warn plaintiff, are controverted facts. The defendant and the engineer and the·fireman on the train would excuse any omission in this respect by the fact that it was not the purpose to cross the public road below the tipple. Plaintiff's counsel say in reply, that this would not excuse the omission, under the law of Kentucky at least; that persons using intervening private ways, including the plaintiff on the private way at the tipple, had the right to rely upon the rule of the company requiring it, and on the custom of blowing the whistle for the crossing, or the ringing of the bell, for their protection, when exercising due care for their safety. This proposition seems to be well fortified by the Kentucky decisions. *Thacker* v. *N. & W. Ry. Co.*, 162 Ky. 337, 172 S. W. 658; *Cahill* v. *Cincinnati R. R. Co.*, 92 Ky. 345, 18 S. W. 2, 13 Ky. Law Rep. 714; *L. & N. Ry. Co.* v. *McNary* (Ky.), 129 S. W. 308. It was recognized as still prevailing, though not applied in *Louisville & Interurban R. R. Co.*, 174 Ky. 633, 639. And this doctrine is by the Kentucky decisions extended to all pedestrians using the track of a railway company in a populous community. So rigorous is the rule enforced as to hold that under such circumstances the railway company must operate its trains with notice of the probable presence of trespassers in mind, and with a lookout so as to give them warning, and under control so as to stop in case of necessity before injury is done. *Ill. Cent. Ry. Co.* v. *Murphy's Adm'x.*, 97 S. W. 729; *C. & O. Ry. Co.* v. *Wilson* (Ky.) 102 S. W. 811.

But should the peremptory instruction have been given on the theory that plaintiff was not at the time of his injury in

the exercise of due care for his own safety? Unless we are authorized to say as a matter of law that he was not, the instruction was properly denied. Plaintiff says he was relying on the signals which he had never known the railroad company to omit. He had worked on the tipple several times before. He swears that when standing behind or between the bents, as he was, just before going on the track, he could not see the approaching engine; that it was moving almost noiselessly, backing down the track; that when he started across he was behind the bent next to the railroad track, and only seven feet from the track, with his mind directed to the business of getting the tools and repairing the tipple; that a truck hauling bone and slag crossed over the track on the private way about every four or five minutes, making a round trip every eight or ten minutes, going to and returning from the dump, 250 to 300 feet away; and that in loading they used a trap· door, from which we may infer that considerable noise emanated. He was busy directing the men in his charge, and had been at the tipple about fifteen minutes before the accident, engaged in this way. He says that after indicating to one of the workmen how to adjust a chain to the tipple and make it safe to use in the work, he and this workman, while engaged in a conversation about the train, both looked up the track, and one of them thought the train had not passed; that the whistle had not been blown at the whistle post; that he did not again look up the track, his back being turned slightly up, and his face down the creek, when they started across; that if the train was above the tipple, he expected the whistle to be blown for the crossing below; and that he had never known the trainmen to fail to do this.

On this state of facts the question recurs: was the plaintiff guilty of contributory negligence barring recovery as a matter of law, or was the question one of fact properly submitted to the jury? The Kentucky courts hold that the rule of "stop, look and listen at public crossings" has never been adopted in that state. *Big Sandy & K. Ry. Co.* v. *Keaton,* (Ky.), 266 S. W. 1056; citing *L. & N. R. R. Co.* v. *Scott's Admr.,* 184 Ky. 319; *L. & N. R. R. Co.* v. *Staebler,* 184 Ky. 730; *Davis* v. *Davis,* 195 Ky. 522. And in consequence of the

absence of this rule the court held in the Keaton case that failure to look before going upon railroad tracks is not contributory negligence warranting a peremptory instruction; that the question is one for the jury.

And in that jurisdiction it is held that when the place is in a populous community or at any crossing where the railway company is under obligations to be on the lookout for persons on the track, the whistle must be blown or the bell rung so as to give warning; and that persons using the track in such places have the right to rely thereon, and without such warning the railway company will be rendered liable for resulting injuries to such persons, provided due care is observed by them for their own safety, a question of fact for the jury to determine. *Big Sandy & K. Ry. Co.* v. *Keaton, supra,* and cases cited. In *C. & O. Ry. Co.* v. *Wilson's Admr., supra,* the holding was that: "Where the persons using a private crossing could plainly hear the signals required for a public crossing, and relied upon them for warning of an approaching train, the railway company is liable for injuries at the private crossing resulting from its failure to give proper signals at the public crossing, though a mile distant." See, also, on this subject, *Thacker* v. *N. & W. Ry. Co., supra; Louisville & Interurban R. R. Co.* v. *Morgan, supra,* and cases there cited. In *Simpson* v. *Louisville, Henderson & St. Louis Railroad Co.,* (Ky.), 269 S. W. 749, recovery was sought on the alleged negligence of the defendant to give the proper signals on which plaintiff claimed to have relied, but a verdict for defendant was sustained, on the ground that the defendant proved by overwhelming evidence that the proper signals were given.

In view of these Kentucky decisions and the evidence in the case, we are of opinion that plaintiff's several instructions given to the jury properly presented the law of the case, and that defendant's instructions numbers 2, 3, 4 and 5 to the contrary were properly rejected. Defendant's instructions numbers 7 and 8, given, properly covered its theory of contributory negligence applicable to the evidence, and properly submitted the question of contributory negligence to the jury, whose finding was necessarily against that theory, a finding

of fact, not reviewable by us upon the evidence in the case.

Finding no reversible error therein, we will affirm the judgment.

*Affirmed.*