*George B. Nelson, for appellant.*

*Jas. Flanagan, Haggard & Benton, for appellee.*

---

GEO. HUCKER'S ADMR. *v.* KENTUCKY CENT. R. CO.

[Abstract Kentucky Law Reporter, Vol. 7—761.]

**Negligence in Personal Injury Case.**

> A railroad company has the exclusive right to the use of the track at a crossing not established by law as a public crossing, and it is not bound to anticipate the presence there of persons crossing the track; and can only be held liable for injury to one crossing the track in the event that the company's employes after discovering the danger could have averted it and failed to do so.

**Duty of Persons on Railroad Track.**

> Persons, as to places which are not public ways or thoroughfares, must be held to presume that trains may be passing at any time, and a railroad company can not be held liable for injuries received at such points unless after the discovery of the danger by its employes the accident could have been averted by them.

**Peremptory Instruction.**

In the trial of a personal injury case the court is only justified in charging the jury to find for the defendant, the railroad company, where there is no evidence produced to sustain the charge of negligence upon the part of those operating the train.

APPEAL FROM KENTON CIRCUIT COURT.

April 17, 1886.

OPINION BY JUDGE HOLT:

George Hucker, a boy about eight years old, was killed in August, 1883, by being run over by a train of the appellee, The Kentucky Central Railroad Company. Upon the day of the accident his mother was traveling with him and one or two other children along a turnpike not far from the railroad in a wagon, which was being driven by one Gadher, to whose house they were going. The only way to get there was to leave the turnpike and cross the track by a passway at "Nunnery's crossing." The turnpike was on the west side of the railroad and distant from it from fifty to one hundred yards, while the house was on the east side of the track and about fifteen yards from it. To reach the crossing the passway curved around a hill, which obstructed the view northward, and reached the bottom or level only about forty feet from the railroad. The view even then was not clear, as bushes and growing corn were along the side of the track, which also curved at that point, and looking northwardly it could be seen but a comparatively short distance when within even a few feet of it. North of the crossing from four to five hundred yards was Bank Lick Station, and north of it some twenty-five yards was Bank Lick bridge.

When the wagon was about to leave the turnpike the driver stopped it a few moments to talk with a neighbor, and at this time he saw a freight train pass which was going north and which must have switched at the station, or else it would have collided with the common passenger train. The parties in the wagon did not stop to listen, nor did they look for any train as they approached the railroad by the passway. They doubtless supposed that as the freight train had just passed no other could be at hand. The horse was upon the track when the driver discovered a passenger train coming south, and within a few feet of him. He at-

tempted to back the horse, but did not succeed in doing so suffi-ciently to keep him from being struck by the train, which threw the deceased out of the wagon and to his death under the train. His administrator brought this action to recover damages upon the ground that his death was the result of wilful and gross negli-gence upon the part of those in charge of the train.

To sustain this charge the appellant relies upon the fact that the train was running at a rapid and unusual speed; that no alarm was sounded at either the bridge, the station or the crossing; and that it was an extra or excursion train passing at an unusual time in the day for a passenger train. The lower court at the close of the appellant's testimony peremptorily instructed the jury to find for the company. This ruling can not be sustained if there is any evidence whatever to sustain the charge of negligence upon the part of those operating the train. It is certain that no diligence whatever upon their part could have prevented the accident after they discovered the danger. It is unnecessary to decide whether any contributory neglect upon the part of the driver of the wagon can be imputed to the child, upon the ground that the former being in charge of the wagon, which is not shown to have been a public conveyance, was so identified with the latter as to charge him with it, because the evidence discloses beyond question that so far as the company is concerned the unfortunate accident occurred without any neglect upon the part of its agents. The passway or the cross-ing was not one established by law. It was not situated nor was it a public thoroughfare. If railroad trains were required to slow up and signal at all points along their roads where people are in the habit of crossing, and to presume and guard against the presence of persons at all such points, the celerity of travel by railroad would be at an end. The company had the exclusive right to the use of the track at the crossing; it was not bound to anticipate the pres-ence there of the deceased; and could only be held liable in the event employes after discovering the danger could have averted it and failed to do so. The accident did not occur at a place where the public had a right to be, but at a point where the right of the company was exclusive.

Reckless speed at such places does not necessarily endanger the lives of persons, as is the case in a town or upon a public way where the public have a right to be, and therefore does not con-

stitute neglect upon the part of the railroad company. If those in charge of the train do not give the customary signals at public places, then the company is responsible; but this is required for the safety of the passengers and the public using and who have the right to use the track at such points, and for the purpose of protecting those who as trespassers may be crossing or using the track elsewhere. Persons, as to places which are not public ways or thoroughfares, must be held to presume that trains may be passing at any time; and a railroad company cannot be held liable for injuries received at such points unless after the discovery of the danger by those in charge of its trains it could have been averted by them.

Judgment *affirmed.*

*J. M. Tisdale, Geo. R. McKee, for appellant.*

*T. F. Hallam, for appellee.*

[Cited, *Cahill v. Cincinnati, N. O. & T. P. R. Co.,* 92 Ky. 345, 18 S. W. 2; *Louisville & N. R. Co. v. Survant,* 96 Ky. 197, 27 S. W. 999; *Gividend's Admr. v. Louisville & N. R. Co.,* 17 Ky. L. 789, 32 S. W. 612.]

