Cahill v. Cincinnati, &c., Railway Co.

CASE 68—PETITION ORDINARY—DECEMBER 10.

## Cahill v. Cincinnati, &c., Railway Co.

APPEAL FROM KENTON CIRCUIT COURT.

1. RAILROADS—SIGNALS AT PRIVATE CROSSINGS.—While the failure of those in charge of a railroad train to give signal of its approach to a private crossing is not generally regarded as negligence, yet where a signal which it is the duty of the company to give, and which is usually given, at a public crossing may be heard at a private crossing near by, those entitled to use the private crossing have the right to rely upon the signal being given, and the failure to give it is negligence as to them as well as to persons traveling on the public highway.

2. CONTRIBUTORY NEGLIGENCE—PEREMPTORY INSTRUCTIONS.—Although the burden of showing contributory negligence is on the defendant, yet upon a motion by defendant for a peremptory instruction it is necessary for the court to determine whether that defense has been so fully developed by the plaintiff's own evidence as to justify sustaining the motion.

3. SAME.—In the absence of direct testimony as to the care exercised by a person killed or injured on a railroad where he had the right to be, it is the province of the jury to determine from the facts and circumstances proved whether he was guilty of contributory negligence, as it is not to be presumed he carelessly imperiled his own life.

4. THE FAILURE OF A PERSON TO LOOK ALONG A RAILROAD BEFORE ATTEMPTING TO CROSS IT is not negligence, if there is sufficient evidence, without that precaution, to satisfy a person of ordinary carefulness that the track is clear—as when one knows it is not usual train-time and he does not hear the usual signal.

5. EVIDENCE.—It was error to refuse to permit one who was in a buggy

92  345
94  120

92  345
96  207

92  345
a102  567

92  345
109  514

92  345
110  670

92  345
d116  155

92  345
d116  155

92  345
e118  151
l18  273

92  345
f120  249

92  345
128  420
f129  819

behind that in which plaintiff was traveling to testify that he at a
point one hundred feet from the crossing looked along the railroad in
the direction of the approaching train, and could not see the train, as
this testimony tended to show that when the buggy in which plaintiff
was traveling was within about seventy feet of the crossing the train,
not yet in sight, must have been more than twelve hundred feet away,
that being the distance at which a train could be seen, and therefore
if running at the usual speed would probably not have struck the
buggy.

6. QUESTION FOR JURY.—Even if plaintiff was guilty of negligence, yet,
considering the long distance at which the buggy could be seen, the
question ought to have been submitted to the jury whether those in
charge of the train did or could by reasonable diligence have discov-
ered the danger of a collision in time to prevent it by checking the
train or blowing the whistle.

7. THE CONTRIBUTORY NEGLIGENCE OF THE DRIVER OF A VEHICLE can
not be imputed to one who is traveling in the vehicle with him by his
invitation.   To render one liable for the negligence of the driver of a
vehicle in which he is traveling either the relation of master and ser-
vant or principal and agent must exist, or the parties must be engaged
in a joint enterprise whereby responsibility for each other's acts exists.

WM. GOEBEL FOR APPELLANT.

1. When a private crossing of a railroad is established by agreement or
acquiescence a person crossing the road is not a trespasser and the
railroad company owes the duty of active vigilance. (Bishop on Non-
Contract Law, secs. 1094, 1054; Shearman & Redfield on Negligence,
secs. 463, 464, 484; 12 Bush, 50; Thompson on Negligence, vol. 1,
p. 418; vol. 2, p. 257; Bishop on Non-Contract Law, sec. 466.)

2. It is not only the duty of a train approaching a crossing to give timely
warning, but it must be given in such a way as not to mislead.
(Pierce on Railroads, pp. 350-1.)

   The fact that a train is behind time is an element to be taken into
consideration in determining the question of negligence.   (L. & N.
R. Co. v. Hudson, 1 Ky. Law Rep., 66; Roberts v. Alexandria R.
Co., S. E. Rep., 518.)

3. When an injury is caused by the negligence of one and the negligence
of another contributed to the injury the person injured is entitled to
recover against either or both.  (Danville T. P. Co. v. Stewart, 2
Met., 119; Sherman & Redfield, sec. 66; Louisville & Nashville R.
Co. v. Case, 9 Bush, 728; Little v. Hackett, 116 N. S., 366; N. Y.,
&c., R. Co. v. Steinbrenner, 47 N. J., 161; 23 Am. and Eng. R. Cases,
330; Dyer v. Emd. Railway Co., 71 N. Y., 228; Masterson v. N. Y.
Cent. R. Co., 84 N. Y., 247; St. Clair St. R. Co. v. Eadie, 43 Ohio St.,
91; Robinson v. N. Y. Cent. R. Co., 66 N. Y., 11; 23 Am. Rep., p. 1.)

4. The burden of proof when there is a plea of contributory negligence is

Cahill v. Cincinnati, &c., Railway Co.

on the pleader. (Gasty v. L., C. & L. R. Co., 79 Ky., 451; Baltimore & Ohio R. Co. v. McKenzie, 24 Am. and Eng. Cases, 400; Long Island R. Co. v. Gxeany, Am. and Eng. R. Cases, 473; Schum v. Penna. R. Co., 107 Pa. St.)

C. B. SIMRALL FOR APPELLEE.

.SIMRALL & MACK OF COUNSEL ON SAME SIDE.

1. Negligence must be proved. (44 Pa. St., 375; 8 Common Bench, N. S., 568; 3 Appeal Cases, 1155; 116 Mass., 401; L. R., 3 Appeal Cases, 197; 9 Bush, 90.)

2. Railroad not required to whistle at private crossing. (13 Am. and Eng. R. Cases, 623; 84 Ky., 43; 82 Ky., 212; 7 Ky. L. R., 161.)

3. Under fence law private crossings must be fenced. (13 Am. and Eng. R. Cases, 625; 84 Ind., 194; 39 Ohio St., 327.)

·4. It is presumed that one seeing train will avoid danger. (13 Am. and Eng. R. Cases, 625; 5 Am. and Eng. R. Cases, 5; 12 Bush, 49; 9 Ky. L. R., 702.)

5. High rate of speed not negligence for express train. (8 Am. and Eng. R. Cases, 467; 79 Pa. St., 33; 12 Kan., 328; 4 Col., 30; 2 Neb., 319; 7 N. Y., 119; 26 Conn., 591; 84 Ill., 397; 26 Ind., 76.)

6. Failure to whistle at public crossing is not negligence as to person at private crossing or elsewhere. (84 Ky., 43; 7 Ky. L. R., 761; 82 Ky., 212; 67 N. Y., 535; Patterson on Railway Accident Law, sec. 160.)

7. Purpose of whistling. (84 Ky., 43; 6 R. I., 211; 47 Pa. St., 300; 4 Hun., N. Y., 508; 42 N. J., 468; 37 Ga., 593; 4 Am. and Eng. R. Cases, 580; 12 Am. and Eng. R. Cases, 64; 15 Am. and Eng. R. Cases, 448; Patterson on Railway Accident Law, sec. 160; Johnson's Adm'r v. L. & N. R. Co., 13 Am. and Eng. R. Cases, 623; Hucker's Adm'r v. K. C. R. Co., 7 Ky. L. R., 761; L. & N. R. Co. v. Howard's Adm'r, 82 Ky., 212.)

8. "Willful neglect" is a statutory degree of negligence and has no application to this case. Contributory negligence is a defense and clearly shown. (Gen. Stats, chap. 57, sec. 3; 13 Bush, 122–6; 87 Ky., 626; Beach on Contributory Negligence, p. 193; 79 Ky., 447; 12 Bush, 41; 2 Am. and Eng. R. Cases, 212; 6 Am. and Eng. R Cases, 38, 84; 9 Fed. R., 867; 19 Am. and Eng. R. Cases, 376; 95 U. S., 697; 114 U. S., 615; 84 Ky., 43; 77 Maine, 85; 23 Am. and Eng. R. Cases, 258, 262; 28 Am. and Eng. R. Cases, 665; 1 Thompson Neg., 426; Wharton on Neg., sec. 384.)

9 Whether a particular witness could have seen the train was an improper question. (Eskridge's Ex. v. C., N. O. & T. P. Ry., 12 S. W. Rep., 581; 8 Am. and Eng. R. Cases, 306; Thompson on Jury Trials, secs. 377, 605; 11 S. W. Rep., 563; 100 N. C., 310; 5 Atla. Rep., 346; 3 Southern Rep., 207; 7 S. W. Rep., 1.)

Cahill v. Cincinnati, &c., Railway Co.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The jury having at conclusion of the plaintiff's evidence in this case, under instructions of the court, returned a verdict as in case of non-suit, she appeals.

The circumstances under which the injury complained of was done are substantially as follows: Plaintiff, an unmarried woman, had started about 9 A. M. from the residence of her father, of whose family she was a member, to church, in a buggy owned and driven by a young man, Henry Conrad, and was closely followed by her sister, also unmarried, and Jerry Conrad, in another buggy. The route they were going was along a private passway which crossed defendant's railway track and west of it intersected a turnpike road. The course of the passway was from the residence mentioned about southwest to a point a short distance from the railroad, thence northwest, making the angle of intersection acute and rendering it necessary for those in the buggies to turn more than half around in order to see a railroad train approaching the crossing from the south. The railroad track was for a considerable distance south of the crossing straight, and, in the opinion of some witnesses, a train coming from that direction can be seen four hundred yards away from a point on the passway one hundred feet from the crossing. But the train which caused the injury was a passenger express, three hours behind time, and running unusually fast, according to the opinion of some witnesses as much as sixty miles an hour, none of them putting it at less than forty-five miles. No signal of approach of the train to Cahill's crossing was given, nor, as the evidence tends to show, was there any upon

its approach to the public crossing south of and distant a half mile from the other.

The injury was done in January, and though the weather was not excessively cold, it was enough so, the ground being frozen, to require the buggy-top raised, and the evidence tends to show Henry. Conrad had on ear-muffs and plaintiff wore a veil. The gait at which they were traveling was not fast, the horse going in a walk. But whether either Henry Conrad or plaintiff before going on the track looked or listened for a coming train does not appear; for he was killed by collision of the buggy and train that took place, and she so seriously hurt that, as testified, her memory is blank about everything that took place during a period of time beginning when she left home that morning and continuing for days.

This court has expressly decided that failure of those in charge of a railroad train to give such signal as will be sufficient to apprise persons at or near a public crossing of its approach must be regarded as negligence. (Paducah, &c., R. Co. v. Hoehl, 12 Bush, 41; Louisville, &c., R. Co. v. Goetz, 79 Ky., 444.) It has, however, been held that the same reason does not exist for giving signal and slackening usual speed of a train at a private crossing, and failure in that respect is not generally regarded negligence. (Johnson v. Louisville & Nashville R. Co., 91 Ky.,651; Hucker v. Ky. Central R. Co., 7 Ky. Law Rep., 761.) But the evidence in this case shows that a signal when given by steam whistle on approach of a railroad train from the south to the public crossing referred to can be distinctly heard at and even beyond Cahill's crossing. And thus arises a question, not heretofore presented to or

decided by this court, whether persons lawfully using a private crossing in the vicinity of a public crossing are entitled to benefit of signals required to be given at the latter; and whether for failure to give it, negligence, as to them, should in any case be imputed to the railroad company.

In Shackelford v. Louisville & Nashville R. Co., 84 Ky., 43, it was said: "Railroad trains must give the customary signals at public places and public crossings; the failure to do so is negligence. But this is required for the safety of passengers, trainmen and the public using, and who have a right to use, the track at such public ways, and not for the purpose of protecting those who as trespassers may be crossing or using the track elsewhere." The same doctrine had been stated in the Hucker case. The reason for that discrimination is that presence of a trespasser on a railroad track is not only likely to impede and sometimes endanger safety of moving trains, but, being wrongful and unlawful, those in charge can not be fairly required or expected to anticipate and provide for it. Consequently the only duty a railroad company owes to such persons is to use reasonable diligence to prevent injuring him when his actual peril is discovered in time to do so.

But that rule can not be properly applied in this case, nor was the precise question now before us settled or considered in the cases just cited. It here appears that Cahill's crossing was established and the right to use it by those going to and from his residence secured by express contract between the railroad company and his immediate vendor. Therefore neither plaintiff nor her companion, Conrad, was a trespasser when the collision occurred, nor had they assumed risks attending a tres-

pass, but both had the legal right to go on the railroad track at that crossing.

There is conflict of authority on the question, the doctrine of some of the courts being that only travelers on a highway or street approaching or using a crossing can complain of omission to give required signals; while by others it is held that all persons in the vicinity of a public crossing, whether intending to use it or not, are entitled to benefit of signals and have a right to rely on them being given. However, as said by the editor of American and English Encyclopedia of Law, in a note, vol. 4, 917, " Generally this conflict may be traced to the construction of particular statutory provisions; sometimes it is due to radical differences of view among judges as to the purpose of statutory enactment regulating signals."

There being no statute of this State on the subject, nor for the reason mentioned a decided weight of authority one way or the other, the question before us must be determined according to reason and analogy of the law, as was the original question of the duty of railroad companies to give signals for highway and street-crossings. Although it may be regarded an unreasonable hindrance of regular and prompt movement of trains running on schedule time to require their speed slackened and signals given at every private crossing, however little used, it does not follow a railroad company is exempted from any reasonable duty to persons who lawfully go on its track at such place. On the contrary, it is bound to look out for presence of persons at an established and recognized private crossing, and use reasonable precaution and vigilance to avoid injuring them. And so they have the right to act upon the presumption the company will duly com-

ply with every legal requirement that may affect them in the reasonable use of such crossing. Therefore, if a person of common prudence and intelligence, who distinctly and habitually hears signals of approach of railroad trains to a public crossing that he knows it is both the duty and custom of the company to give, would ordinarily rely on such signals in the use of his own private crossing, then he should in law as well as in fact have benefit of them. Otherwise his would be the case of a person injured while in the reasonable exercise of a legal right, yet without remedy against the wrongdoer or person in fault.

As a matter of fact within common observation persons living in the vicinity of a railroad generally keep informed about regular movement of trains, and those of them near enough to hear the customary sound of the steam whistle for a public crossing do rely upon it as a signal by which to regulate use of their own private passway over it. And we see no reason why they may not rightfully and prudently do so; for nothing more is thereby exacted or assumed by them than simple performance by the railroad company of a legal duty already prescribed for safety of those using the public crossing that incidentally and naturally operates for their own. And when the legal obligation is coupled with customary performance of the duty of giving such signals, a double assurance is afforded that all who hear may rely on them; and in fact they are as implicitly and may be as certainly and safely relied on by those hearing them at a private as at the public crossing for which they are given.

To so allow a person to go on the railroad track at his private crossing, and then exempt the company from

liability for injuring or killing him upon the fallacious and deceptive theory that in legal contemplation, signals though inevitably heard beyond, are for the sole benefit of those at, a public crossing, would be without reason and justice. The law sets no such bounds to the liability of a person violating it, nor does it thus curtail the remedy of one injured by the violation.

The evidence in this case shows it was customary for signals to be given of approach of trains to the public crossing referred to, and that persons using Cahill's crossing were thereby enabled to tell about what time one going north would pass, and so avoid collision with it.

In our opinion failure of those in charge of the train in question to give the usual signal for the public crossing, if they did so fail, should be regarded negligence of defendant as to plaintiff, and authorize recovery, unless she was guilty of such contributory negligence that but for it the collision would not have occurred.

Although the burden of showing contributory negligence is always on the defendant, and the plaintiff in this case was not in order to recover bound to disprove it, still it was competent for the lower court on the motion for a peremptory instruction, as it is now necessary for this court in revising the judgment, to determine whether that defense was so fully developed by her own evidence as to justify sustaining the motion.

It is not contended the plaintiff was negligent in any respect except failing to look for a coming train before going upon the railroad. Whether either she or Henry Conrad did so look could not, for the reason before indicated, be shown by direct testimony. Therefore it was the peculiar province of the jury, not of the court, to determine that

question from facts and circumstances proved; for whatever may be the rule elsewhere it has been definitely settled by this court that it is not to be presumed in the absence of evidence as to the care exercised by a person injured or killed on a railroad, where he had a right to be, that he recklessly or carelessly imperiled his own life. (Louisville, &c., R. v. Goetz, 79 Ky., 442.)

Moreover, even if plaintiff was guilty of negligence, considering the long distance, four hundred yards, the buggy could have been seen from the train, the question was pertinent and ought to have been submitted to the jury whether those in charge did or could by reasonable diligence have discovered the danger of a collision in time to prevent it by checking the train or blowing the whistle.

But to decide that failure of a person to look along a railroad before attempting to cross it is under all circumstances, and necessarily, negligence, would be arbitrary and without reason; for there may be evidence sufficient to satisfy a person of ordinary carefulness, the track is clear without taking that precaution—as when he knows it is not usual train-time and does not hear the signal he knows it is customary for the company to give and him to hear. A person thus reasoning and acting, it seems to us, can not upon principle be regarded as negligent, even if he does fall short of the measure of vigilance needed to prevent being injured by a passenger train running hours behind time, at an extraordinary rate of speed and without any signal of its approach.

In that connection it was error in refusing to permit Jerry Conrad to testify that he, at a point one hundred feet from the crossing, looked from his buggy south along the railroad and could not see the train. The evidence

was competent because it tended to show that when Henry Conrad's buggy, being nearer than the other, was within about seventy feet of the crossing, the train, not yet in sight, must have been more than twelve hundred feet away, and therefore if running at the usual speed it is questionable whether it would have struck the buggy.

Another question argued by counsel is whether negligence on the part of Henry Conrad, assuming it to be proved, can be imputed to plaintiff in bar of recovery. The general rule, as settled by this court, is that when an injury is occasioned by concurrent negligence of two persons the fault of one is no excuse for the other, but both are liable to the party injured. (Danville, &c., Turnpike Road Co. v. Stewart, 2 Met., 119; Louisville, &c., R. Co. v. Case, 9 Bush, 720.) In both those cases the plaintiff was a passenger in a public conveyance. But the conditions upon which contributory negligence of one of such persons can be imputed to the plaintiff in an action against the other, as held in the latter case, are that he must have then been the agent or servant or subject to the government or control of the plaintiff. It does not therefore seem to make any difference in such case whether the party injured was at the time a passenger in a public conveyance paying his fare, or riding in a private vehicle free of charge at invitation of the owner and driver; but the true test is whether his relation to the person whose negligence is sought to be imputed to him was such as would have rendered him liable in case another than himself had been injured by such concurrent negligence. For to defeat an action of a party injured by showing contributory negligence of another, or to render him liable for that other person's negligence, not being himself in fault, either the maxim

*qui facit per alium, facit per se* must apply—that is, the relation of master and servant or principal and agent must exist—or else that they were engaged in a joint enterprise whereby mutual responsibility for each other's acts existed, which was clearly not the case.

Robinson v. New York, &c., R. Co., 66 N. Y., 11, was the case, like this in every respect, of a female who, while riding in a buggy at invitation of a young man, the owner and driver, was injured by collision with a railroad train, and in discussing the same question we are now considering, Church, C. J., said : " I am unable to find any legal principle upon which to impute to the plaintiff the negligence of the driver. * * The acceptance of an invitation to ride creates no more responsibility for the acts of the driver than the riding in a stage-coach, or even a train of cars, providing there was no negligence on account of the character or condition of the driver, or of the safety of the vehicle, or otherwise. It is no excuse for the negligence of the defendant that another person's negligence contributed to the injury, for whose acts the plaintiff was not responsible."

Masterson v. New York, &c., R. Co., 84 N. Y., 247, was the case of a person being invited to ride in a private vehicle by the owner and driver, and losing his life while the vehicle was crossing the defendants' road, where it was left in a dangerous condition ; and in St. Clair St. R. Co. v. Eadin, 43 Ohio St., 91, the plaintiff, a minor under sixteen years of age, yet fully able to take reasonable care of her safety, was injured by collision between a wagon, in which she was riding with her father, owner and driver, and the defendants' car. In both cases it was held that the same principle governed as in case of a pas-

Cahill v. Cincinnati, &c., Railway Co.

senger in a public vehicle, and that as the driver in neither case was the servant or agent of the plaintiff, the latter could not be held responsible for negligence of the former.

The case of Dean v. Pennsylvania R. Co., 129 Pa. St., 514, cited by counsel, is where, under the particular circumstances recited, a person riding by invitation of the owner and driver of a private vehicle was held to have been guilty of contributory negligence. It is true a passenger in a public as well as private vehicle may, by his own negligence, contribute to its collision with another vehicle whereby he is injured. But the question before us is not whether the plaintiff in this case was negligent, but whether the assumed negligence of the owner and driver of the buggy she was in can be imputed to her. The distinction is recognized even in the case cited, and, although it is there said a person carried in a private conveyance is responsible for his own negligence, yet it is distinctly held that negligence of the driver can not be imputed to him, any more than that of a common carrier can be to his passenger.

It seems to us there is no authority or sound reason for imputing to the plaintiff in this case the negligence of Henry Conrad, if he was guilty of any, in the absence of evidence that she voluntarily accepted his invitation knowing him to be incompetent and unreliable, or that she instead of him did actually control and direct the movement of the buggy.

Wherefore the judgment is reversed for a new trial consistent with this opinion.