## Hertell's Administratrix v. Louisville & Nashville Railroad Company.

## Falls City Ice and Beverage Company v. Louisville & Nashville Railroad Company.

(Decided June 25, 1926.)

### Appeals from Oldham Circuit Court.

1. Trial—Positive and Negative Testimony as to Train Signals Makes Question for Jury.—If witness was possessed of usual auditory faculties and in position to hear train signals, but did not hear

such signals, and train operatives testified that signals were given, question whether they were given is for jury.

2.  Railroads.—Peremptory instruction should be denied railroad company when jury might fairly differ about inference of negligence at crossing.

3.  Railroads—Railroad is Liable for Collision if Result of Failure to Give Crossing Signals Relied on by Truck Driver Unable to Escape After Discovering Train.—If truck driver relying on crossing signals, as he had right to do, attempted to cross railroad tracks and was struck because of lack of time to escape after discovering train, because of its failure to give signals, railroad company is liable.

EDWARDS, OGDEN & PEAK and FRED FORCHT for appellants.

D. H. FRENCH, D. E. WOOLRIDGE and WOODWARD, WARFIELD & HOBSON for appellees.

Opinion of the Court by Judge Sampson—Reversing.

Adam Hertell, a truck driver for Falls City Ice and Beverage Company, of Louisville, was instantly killed on the tracks of appellee railroad company at Buckner, in Oldham county, on May 15, 1924, and the truck demolished by a freight train on the highway crossing, and these two suits by the administratrix of Hertell and by the beverage company were instituted in the Oldham circuit court against the railroad company to recover damages for the wrongful death of Hertell and for the loss of the truck, respectively. They were tried together, the court at the conclusion of all the evidence directing a verdict for the railroad company, and the administratrix and the beverage company prosecute this appeal. The question, therefore, is upon the propriety of the court's ruling in directing a verdict for appellee company.

Appellants, administratrix and beverage company, insist that the trial court was in error in so instructing the jury and argue that a peremptory instruction is never proper when the evidence of negligence to be deduced from the facts as proven, is such that fair-minded men might reasonably differ about the same, it being a well established rule in this state that whether the positive testimony of witnesses that signals were given for a highway crossing outweighs the negative testimony of other witnesses who testified they did not hear the signals, but were in a position where they could have

heard them, had they been given, is a question of fact
clearly for the jury. Appellee company insists that
there was no negligence in the operation of the train,
either in failing to give signals of its approach to the
crossing or as to its speed, or otherwise, and therefore it
insists that the lower court properly gave a peremptory
instruction. Hertell, an experienced truck driver, left
Louisville in the morning for LaGrange to serve custom-
ers of the beverage company. On his return he stoppped
at a store at Buckner, near and back of the depot, a
point from which he could not see down the tracks, and
then drove along the highway almost parallel with the
railroad company tracks for a few hundred feet to the
crossing, and, evidently started across the tracks before
he discovered the approach of the train but on discover-
ing that the train was almost on him he stopped his truck
just as the front wheels went on to the railroad track and
attempted to reverse his engine and back off the track
before the train struck him, but before he could do so
the truck was struck by the engine and demolished and
Hertell so injured that he immediately thereafter died.
The suits by appellants were based upon the theory that
the train operatives neglected to give the statutory sig-
nals for the crossing at which Hertell was killed, but the
railroad company insists that all the signals, including
those for the station and the crossing, were properly
given. The evidence on both sides was directed to this
question except such as was introduced to show the im-
mediate surroundings, that there were houses and other
obstructions which cut off the view of the deceased as he
approached the tracks of the company at the crossing.
The engineer in charge of the train which struck Hertell
was introduced as a witness by the railroad company
and he testified that he gave all of the signals which it
was his duty to give in approaching the depot and the
crossing and gave them at the required distances. He
was asked:

"Q. Mr. Booth, did you give any signals before
you approached that crossing that day? A. Yes,
sir.

"Q. Is there another crossing near it? A.
Yes, sir. . . .

"Q. State whether or not on that day you gave
a station whistle? A. I did. . . .

"Q. What was the station whistle, when you blew for the station what did you do? A. One long blast of the whistle. . . .

"Q. What other signals did you next give that day? A. I blew a signal for the crossing north of Buckner.

"Q. How many blasts of your whistle did you blow there? A. Four.

"Q. Did you give any other signals before you got to the station? A. I blew before I got to the crossing. . . . Blew for the crossing south of Buckner and blew for the station, the semaphore board.

"Q. How many blasts did you give for the board? A. Four blasts.

"Q. Now after that did you blow any signals, any further blasts of your whistle? A. I blew the alarm signal.

"Q. Did you blow signal for the crossing? A. No, sir, I blew the signals for the crossing before that.

"Q. How many blasts of the signal did you blow for the crossing? A. Four."

According to his testimony he gave seventeen blasts of the whistle from the time the engine neared Buckner station until he began to give the alarm signals immediately before it struck the truck. He is supported in this by the evidence of other train operatives, all of which was intended to prove that the railroad company was not negligent in the operation of its train and did not fail to perform any duty which it owed to the public, including Hertell. On the other hand, a number of witnesses called by the plaintiffs, now appellants, testified that they were near the place of collision and that they saw and heard the approach of the train but did not hear any blasts of the whistle until the alarm signal was given immediately before the engine collided with the truck. These witnesses were, according to their evidence, in position to hear such signals and were near enough to hear and to see what took place. True, most of this evidence is of a negative character, the witnesses saying that they could not hear the whistle of the engine, or if they did they did not recall hearing it. Some of them stated, "I was not paying any attention to the whistle; I do not remember hearing the whistle," and some of them stated that the

engine did not whistle, or if it did they did not notice it, although they were observing the train.

When it is shown that a witness or witnesses are near enough to hear and are in position to hear and are possessed of the usual human auditory faculties and are able to hear the blasts of a train whistle or other train signals, but did not hear such signals, the case is one for the jury when it is testified by the train operatives that signals were given. We have many cases so holding. C. & O. Ry. Co. v. Hawkins, 124 S. W. 838; L. & N. R. R. Co. v. Brown, 113 S. W. 466; L. & N. R. R. Co. v. O'Nan, 119 S. W. 1192. One of the most recent cases dealing with evidence of signals is Collett's Guardian v. Standard Oil Company, 186 Ky. 142, where it was in substance said that where there is positive evidence that warnings were given by a motor vehicle, of its approach to a pedestrian walking in the roadway of a public highway, and there is also negative testimony by witnesses, who were so situated that it could reasonably be inferred that they could and would have heard the warnings if they had been given and that they did not hear such warnings, the question of whether the warnings were or were not given is for the jury. The rule is also well established that a peremptory instruction should be denied a railroad company when the inference of negligence to be deduced from the proven or admitted facts are such as the jury might fairly differ about. Some of the cases holding that the question is for the jury where there is testimony showing that persons in position to hear did not in fact hear or notice signals, if given, for crossings although there was evidence on the other side that signals were given, are the following: Payne, Agent v. Barnett's Admr., 196 Ky. 489; Welch v. Jenkins, 190 Ky. 476; Denker Transfer Company v. Pugh, 162 Ky. 818; Adams Express Company v. Tucker, 161 Ky. 741; Kincaid v. Bull, 159 Ky. 527; L. & N. R. R. Co. v. McArthur, 163 Ky. 291; C. & O. R. R. Co. v. Nipp, 125 Ky. 49; I. C. R. R. Co. v. Beeler, 142 Ky. 773; L. & N. R. R. Co. v. Joshlin, 110 S. W. 383; Cahill v. Cinti. Ry. Co., 92 Ky. 345; C. & O. Ry. Co. v. Hawkins, 124 S. W. 837; L. & N. R. R. Co. v. Lucas, 30 Ky. Law Rep. 359.

The railroad company attempts to distinguish this case on the facts from other cases where the question turned upon whether the crossing signals were given, insisting that Hertell stopped his truck upon the crossing or killed his engine on the crossing and thus by his negli-

gence or inefficiency brought about his death and the destruction of the truck, thus exonerating the railroad company. The evidence upon this point is not very clear or satisfactory. If it were permissible to speculate on what took place in the mind of Hertell as he approached the crossing it might do to say that after his truck came to the bend of the road where it passed at right angles across the track and Hertell's side was turned to the track so that he could see the approach of the train, he realized for the first time that a train was rapidly approaching the crossing and undertook to put on his brake and check the truck before it reached the tracks of the railroad and failed to do so and when the truck was brought to a standstill he reversed his engine and attempted to back off the track and thus avoid the train but was not quick enough to do so and was struck. The accident may have happened otherwise, but if the train did not give the statutory signals for the crossing, and Hertell relying upon such signals, as he had a right to do, attempted to cross the tracks and the truck was struck either because of lack of time to clear the track by crossing it, or for want of time to back off the track after the presence of the train was discovered, and the collision was the result of the failure of the train to give the signals, the railroad company is liable.

As there was evidence given by witnesses in position to hear train signals that no such signals were given or heard by them, the question was one for the jury, even though the trainmen testified that all required signals were given, and the lower court erred in sustaining the motion of appellee company for a directed verdict in its favor. The case should have been submitted to the jury. All other questions are expressly reserved.

Judgment reversed for new trial consistent with this opinion.