## Chesapeake & O. Ry. Co. v. Burke's Adm'x.

Feb. 23, 1945.

852

LeWright Browning and Combs & Combs for appellant.

Joe Hobson for appellee.

Opinion of the Court by Judge Thomas—Reversing.

At about 5 p.m. on May 21, 1943, a passenger train of seven cars, tender and engine, on its way from Elkhorn City, Kentucky, to Ashland, Kentucky, collided with Albert Burke at a grade crossing in Auxier, Floyd County, Kentucky, whereby he was instantly killed. His widow qualified as his administratrix and filed this action in the Floyd circuit court against appellant to recover damages sustained by the estate of the decedent, which was placed in the petition at the sum of $3,000.

The negligence charged was the usual one—that the agents and servants in charge of and operating the train "so carelessly and negligently operated same as to cause said train to strike plaintiff's intestate," inflicting the injuries from which he died. The defendant denied the negligence charged against it and pleaded contributory negligence of the decedent which was denied, thus forming the issues. At the trial the jury impaneled to try the case returned a verdict in favor of plaintiff for the sum of $1,500 upon which judgment was rendered.

Defendant's motion for a new trial having been overruled, it prosecutes this appeal relying for a reversal chiefly upon the ground that the court erred in overruling its motion for a peremptory instruction in its favor, based upon the two contentions of (a) that the testimony failed to sustain the charge of negligence made against the defendant, and (b) that it likewise sustained the charge of contributory negligence of decedent, so as to defeat the recovery sought by the petition.

We find no merit in the other grounds contained in the motion. Neither do we find it necessary to discuss or determine contention (b) relative to contributory negligence of the deceased, since we have concluded that contention (a) should be sustained.

The testimony of plaintiff was directed to the establishment of two facts; the first of which was that the road crossing the track at the point of the collision was a public road, and the second was that the signals required by the statute (section 277.190, KRS) were not given as required therein, i.e. that the bell was not rung "or the whistle sounded continuously or alternately until the engine has reached the highway or crossing." It was testified to by all of the witnesses—including, of course, the engineer and fireman on the train — that whistling signals for the crossing, as well as for the station depot some 500 feet beyond it, were sounded at substantially the distance from the crossing required by the statute. But it is contended by counsel for plaintiff that such signals were not continuously or alternately given between that point and the crossing, thus making the case dependent entirely and exclusively upon such failures as constituting the negligence relied on. Whether counsel for plaintiff agrees with that statement or not, the testimony nevertheless creates that exact situation.

On whether or not the statutory signals to be alternately given from the time of whistling for the crossing until it is reached by the train, only two witnesses testified on behalf of plaintiff, namely, Odell Webb and Josephine Shell. They with one Clifton Hall were sitting in an automobile by the side of a store building in which one Patton conducted a mercantile business, and which was located 57 feet from the railroad. On the other side of the railroad, which was double tracked, the deceased resided. He had been to Patton's store and purchased some merchandise and left the store on his way back home. When about 15 feet from the track he passed Carl Setser who was also on his way from Patton's store to the opposite side of the railroad track. He had stopped within that distance from the track in order for the train to pass, the signals from which he had heard, as well as the noise from the approaching train, and he saw its approach. Just as decedent was

passing him he turned his head toward the direction from whence the train was approaching and struck up a trot, but failed to clear the crossing before the arrival of the train, which at that time was very near to the crossing. That witness also stated that the bell was ringing at that time and also ringing before the train arrived at the crossing. The engineer testified that when he gave the crossing signal he turned on the automatic power that rang the bell and never released it until after the collision, and after he had gotten out of his cab to see what had happened to the deceased. Noticing that the bell was continuing to ring he got back into the cab and turned it off. The fireman supported him in that testimony which made three witnesses testifying positively that the bell was ringing at the time the train approached the crossing and continued to do so until the engineer turned it off.

Another witness, Ray Tibbs, testified that he witnessed the collision but whose attention was engrossed by the inevitable danger to the decedent in his effort to cross the track in front of the train. That witness testified that he heard the signals for the station and for the depot, but that he did not notice whether or not the bell was ringing at the time it approached and entered upon the crossing, though he would not say that it was not ringing. The witnesses supra (Webb and Shell) for plaintiff on the issue as to whether or not the whistle was blown or the bell rung continuously or alternately, as required by the statute, testified on their examination in chief that the bell was not ringing when it approached the crossing, but on cross-examination they admitted that they were paying no attention to that and that it may have been ringing without their observing it either by sight or hearing.

Before the rendition of our opinion in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, such negative testimony was regarded by this court as sufficient to create a scintilla that required the case to be submitted to the jury. But our opinion in that case overruled former opinions sustaining the weight and effect to be given to a scintilla of proof, and held that where a verdict was flagrantly against the evidence because supported only by a scintilla of proof, the court should direct a verdict in favor of the litigant against

whom the scintilla was created instead of traveling around the circle of reversing the judgment as being flagrantly against the evidence and ordering a new trial, notwithstanding the determination by this court that the evidence was insufficient to support the verdict. The rule so announced in that (Nugent) opinion was found to be in accord with the great majority of courts in this country both Federal and State, and we have followed it in a number of cases since that opinion was rendered. Here we have positive evidence by a greater number of witnesses that they saw and heard the ringing of the bell as the train approached the crossing and continuously until it was released by the engineer in the manner we have pointed out.

. Under the doctrine of the Nugent opinion we see no escape from the conclusion that it was the duty of the court to sustain the peremptory instruction offered by defendant at the close of plaintiff's testimony, regardless of what may be the merits of the defense of contributory negligence on the part of the decedent, and also regardless of another issue that the road crossing the track and upon which deceased was traveling was not a public road but only a private one. If only a private one the statute referred to does not require the giving of the specified signals on the part of defendant, and which forms the basis of plaintiff's cause of action. See cases cited in note to section 277.190 supra of KRS. The evidence that the road was a public one, so as to require the statutory signals to be given, did nothing more than to show that any member of the public who desired to travel the road between its termini had done so for a number of years past, but the termini as shown by the witnesses was between a coal mining operation some several hundred yards below the crossing in the direction the train was traveling, and the village of Auxier. There is comparatively no evidence, if any, to show that it served any other part of the public than persons desiring to travel between those points. No pretense that the County of Floyd, or any other public agency, had ever accepted the road as a public one, or had ever made any improvements upon it was shown or attempted to be shown. However, in view of our conclusions supra— that negligence on the part of the defendant was not proven—it becomes unnecessary to determine the character of road involved. Likewise, as we have herein-

856

before stated, it becomes unnecessary to determine the issue of contributory negligence on the part of decedent, and those issues are reserved.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside, and to sustain defendant's motion for a directed verdict in its favor upon another trial, if one is had and the evidence is substantially the same, and for such other proceedings as are not inconsistent with this opinion.

The Whole Court sitting.