**Hubert COLLETT, Appellant,**

v.

**Hugh TAYLOR et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 30, 1964.

James W. Smith, Smith & Gillis, Elizabeth Gillis, Middlesboro, for appellant.

J. C. Helton, Pineville, for appellee Hugh Taylor.

Logan E. Patterson, Patterson & Berger, Robert B. Berger, Pineville, for appellee Aetna Cas. & Surety Co.

PALMORE, Judge.

This is an automobile negligence case in which the defendant, Collett, appeals from

a judgment on a verdict awarding the plaintiff, Taylor, $16,171.28 for personal injuries. The only question is whether the defendant was entitled to a directed verdict on the ground that (1) there was no substantial evidence of negligence on his part or (2) the plaintiff was negligent as a matter of law.

The accident happened on the afternoon of July 3, 1961, at a point on U.S. Highway 25E about two miles north of Pineville. The day was clear and dry. Taylor, a garage mechanic, was road-testing a 2-ton truck on which he had done some repair work. He drove northward out of Pineville and was in the act of making a left turn into a junkyard on the west side of the highway when an automobile driven by Collett, attempting to pass from behind, collided with the left rear quarter of the truck.

Collett and his wife testified that he sounded his horn as he moved into the left lane to pass. Taylor testified that he was unaware of the automobile's presence and did not hear a horn or any other noise to indicate Collett's intention to pass. The truck window immediately to the left of Taylor's position in the driver's seat was open.

KRS 189.340(1) provides, "The person operating * * * the overtaking vehicle shall sound his horn or other sound device before passing." If, therefore, Taylor's evidence that he did not hear any signal was sufficient to support a finding by the jury that Collett did not in fact sound his horn, Collett was not entitled to a peremptory on ground (1).

In Collett's Guardian v. Standard Oil Co., 186 Ky. 142, 216 S.W. 356 (1919), "it was in substance said that where there is positive evidence that warnings were given by a motor vehicle, of its approach to a pedestrian walking in the roadway of a public highway, and there is also negative testimony by witnesses, who were so situated that it could reasonably be inferred that they could and would have heard the warnings if they had been given, and that they did not hear such warnings, the question of whether the warnings were or were not given is for the jury." Hertell's Adm'x v. Louisville & N. R. Co., 215 Ky. 639, 286 S.W. 693, 695 (1926). However, the scintilla rule was then in force. Cf. Louisville & N. R. Co. v. Jameson's Adm'x, 214 Ky. 552, 283 S.W. 1026, 1030 (1926). Later on, after Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877 (1940), had abolished the scintilla test, it was held that negative evidence by witnesses to the effect that they did not "hear" a sound signal was no longer sufficient to present a jury question against positive testimony that such a signal was given. Chesapeake & O. Ry. Co. v. Burke's Adm'x, 299 Ky. 851, 187 S.W.2d 295, 296 (1945).[1] See also Louisville & N. R. Co. v. Galloway's Adm'x, Ky., 267 S.W.2d 90, 92 (1954), on which the appellant in this case specifically relies

■■■ The court evidently had difficulty with the rule prevalent before Nugent,[2] but the sailing has been even rougher since the opposite tack was taken in Chesapeake & O. Ry. Co. v. Burke's Adm'x, 299 Ky. 851, 187 S.W.2d 295, 296 (1945).[3] The case now

1. Meanwhile, in Cincinnati, N. O. & T. P. Ry. Co. v. Hare's Adm'x, 297 Ky. 5, 178 S.W.2d 835, 838 (1944), without alluding to the possible effect of Nugent, the court had held that the negative testimony of witnesses *whose attention had been attracted* was sufficient to raise the issue.

2. Cf. dissenting opinion of Judge Logan, joined in by Judges Thomas and Rees, in Louisville & N. R. Co. v. Curtis' Adm'r, 233 Ky. 276, 25 S.W.2d 398, 403 (1930).

3. See, for example, the tightrope act in Fryrear v. Kentucky & Indiana Ter-

minal R. Co., 310 Ky. 250, 220 S.W.2d 546, 549–550 (1949), in which it was said that because the witness went the further step of explaining that she *would have* heard the signals if they had been sounded, her testimony would have been sufficient to raise the issue except for the fact that she was an interested party and several witnesses on the other side were disinterested. And in Fayette County v. Veach, Ky., 294 S.W.2d 541, 544 (1956), a witness's testimony was elevated from the status of "negative" to "positive" because he stated "unequivocally" that the signal was "not audible."

before us illustrates that if the rule is to be applied hard and fast, without exception or qualification, it is bad law. The weight and value of evidence is tested in terms of likelihood, or reasonable probability. If a witness (whether interested or disinterested) was in a position in which it is likely that he would have heard *and noticed* a warning signal, and he did not hear it, it seems to us that there is a reasonable basis for the jury to infer that the signal was not given, particularly when the witnesses testifying that it was given are interested.

■ Under ordinary circumstances a person driving a vehicle on a highway will hear and be alerted by the sounding of a car horn immediately behind him. Therefore, his testimony that he did not hear such a signal ordinarily should be regarded as substantial evidence that it was not given. His interest in the outcome of the case, and the interest of those witnesses who testify to the point on the other side, are matters of credibility for the jury to weigh. Quite often all the evidence on the question, pro and con, will come from the lips of witnesses with partisan feelings, as it did in this instance. In such a case it would be unfair to hold that the so-called "positive" testimony must be believed for the simple reason that the adverse party had only his ears to rely on. Indeed, he would be left utterly defenseless.

■ The conclusion we reach on this problem is that there can be no hard and fast application of the rule one way or the other for all time and all circumstances. Whether a jury issue is presented by so-called "negative" testimony must depend on the facts of the particular case, including the degree of preponderance of the positive evidence, the likelihood that the witness or witnesses giving the negative evidence would have heard and noticed the signal had it been given, and the interest or disinterest of the respective witnesses. To the extent that they may be construed as inconsistent with this statement, Chesapeake & O. Ry. Co. v. Burke's Adm'x, 299 Ky. 851, 187 S.W.2d 295 (1945), and Louisville & N. R. Co. v. Galloway's Adm'x, Ky., 267 S.W.2d 90 (1954), are overruled.

■ We think it is very probable that Taylor would have heard and heeded the horn if Collett had sounded it. His testimony that he did not hear it was enough to support a finding that it was not sounded. Hence there was substantial evidence of negligence on the part of Collett, and he was not entitled to a directed verdict on the ground the proof failed in that respect.

■ Whether the plaintiff truck-driver was contributorily negligent as a matter of law involves KRS 189.350 and 189.380, especially the latter. KRS 189.350 requires the operator of the vehicle about to be overtaken to give way and cooperate as the circumstances reasonably demand. Literally, these duties are predicated upon receipt of the audible signal required by KRS 189.340 (1), but presumably they would apply also if in some other manner the driver being overtaken is or should be aware of the move to pass. KRS 189.380 provides in part, "No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety * * *. No person shall so turn any vehicle without giving an appropriate signal * * * continuously for not less than the last one hundred feet traveled by the vehicle before turning. * * * either by means of the hand and arm or by a signal lamp or lamps or a mechanical signal device."

The truck was equipped at the rear with directional turn signals, but they were not in working order. Taylor says he extended his left arm horizontally from the window of the truck and kept it so extended for a distance of 100 feet or more before turning. There is no dispute that he slowed down and that the brake light on the back

of the truck came on before he started to turn.[4]

The contention that Taylor was negligent as a matter of law proceeds along two avenues, (1) his failure to observe the presence of the Collett vehicle and (2) his alleged failure to give an appropriate turn signal.

The bed of the truck was so constructed as to block the driver's rear view except for the presence of a large "Westcoast" mirror mounted on braces and extending about 22 inches from the left side of the cab. Taylor estimated that the bed "would stick out a foot, I guess, more or maybe less" beyond the cab. A witness testifying for the defense measured this latter distance at 16 inches and stated that the mirror was of the type that "gives the most view to the rear when properly installed" and had been installed "in the standard way and manner." Taylor testified that the mirror afforded him an unobstructed rear view of the left traffic lane, and also of the lane directly behind him except for a blind spot in which he would not be able to see a vehicle within three to five car lengths immediately back of the truck. He said that as he prepared to turn he looked in the mirror and did not see any car: "It would have been behind the bed of the truck and I wouldn't have seen it, but if it had been close enough to pass I would have seen it in the mirror. As I turned I heard brakes scream," etc.

Collett's version was that he was three or four car lengths behind the truck when he moved into the left lane and sounded his horn. Both vehicles were slowing down, but Collett accelerated when he pulled out to pass. The truck began veering to the left when the front end of the automobile was "getting close" to the rear end of the truck. At this time the speed of the truck was 20

to 25 m. p. h. and the speed of the car was about 40 m. p. h. The car skidded 68 feet before impact. Both vehicles wound up almost completely off the left or west margin of the pavement.

The argument that Taylor was negligent in failing to see that the coast was clear before attempting his turn overlooks the fact that he says it was. The highway was two lanes wide. It is undisputed that the rear view mirror of the truck presented to the driver an unobstructed vision of the left lane, and Taylor says he was looking. Whether he also could or perhaps should have been able to see the automobile *before* it moved into the left lane is immaterial because, even if he had seen it, in the absence of a signal from Collett that he was about to pass (and, as we have said, that was a jury question) Taylor had every right to make his turn, provided he gave the proper statutory signal of his intention to do so. Unless the following vehicle has already begun its passing move there is no law that gives it priority over a forward vehicle's right to turn left. In fact, the converse is true; the forward vehicle has precedence.

The last argument is in substance that Taylor failed to give an appropriate signal because, in view of the width of the truck bed, his arm was not long enough. On cross-examination he guessed that his arm was a foot and a half or two feet long. Taking the measurements made by one of Collett's witnesses,[5] counsel submits that Taylor's fingertips could not have extended beyond the truck bed. Hence the turn signal could not have been "clearly visible," as required by one of the instructions offered in behalf of Collett and given by the trial court.

KRS 189.380(4) provides that "the operator of any vehicle so constructed or loaded that a hand and arm signal would not be

4. Collett was not necessarily placed on guard by the brake light, because he said the truck had been speeding up and then slowing down for some distance over which he had been following along behind it.

5. Five inches from the outer edge of the steering wheel to the door, three inches for the thickness of the door, and 16 inches from the door to the line of the truck bed, totalling 24 inches.

visible both to the front and rear of such vehicle shall indicate an intention to turn by use of a signal lamp or lamps or mechanical signal device," etc. The trouble in this case, however, is that the evidence does not establish conclusively that Taylor's hand and arm signal was not visible. The length of Taylor's arm was only a horseback estimate. It would have been easy to measure it with a yardstick in the presence of the jury. On this question in which inches were important, no attempt was made to establish whether Taylor was sitting in such a position that his left armpit was in a precise fore-and-aft line with the left edge of the steering wheel. He may very well have leaned to his left as he extended his hand and arm. All of this, pro and con, is pure speculation. The record shows that Taylor was required on the witness stand to demonstrate the manner in which he executed the signal. Certainly the jury was in a better position to judge this particular point than we are.

On the basis of the evidence in this case it would not have been unreasonable for the jury to conclude that Taylor did give a visible signal, that Collett did not sound his horn before moving to his left, and that the two vehicles turned leftward at about the same instant. Those permissible inferences precluded a directed verdict for Collett.

The judgment is affirmed.