Frank E. HADDAD, Jr., Ancillary Administrator of the Estate of Joseph P. David, Deceased, Appellant,

v.

William M. HARVIN, Administrator of the Estate of Earl M. Little, Deceased et al., Appellees.

Court of Appeals of Kentucky.

May 24, 1968.

Raymond C. Stephenson, Hottell, Stephenson & Burke, Louisville, for appellant.

Edwin O. Davis, Davis & Mahan, Marshall B. Woodson, Jr., Woodson, Barker & Durning, Daniel T. Taylor, III, D. H. Robinson, Louisville, for appellees.

DAVIS, Commissioner.

On a rainy November evening, a multiple car crash occurred on the Watterson Expressway just east of Bardstown Road. Three persons died in the accident, and

others sustained personal injuries and property damages. Various suits followed, one of which is before us in the present appeal.

Joseph P. David was one of those killed; he was a passenger in an eastbound car operated by Dr. Earl M. Little, who was also accompanied by his wife, Joan B. Little. Both Dr. and Mrs. Little died as a result of injuries received in the accident. A jury returned a verdict in favor of the appellant, as administrator of David's estate, in the sum of $100,000 against Benton R. Jeffries. The jury awarded $100,000 to the estate of Dr. Little and $20,000 to the estate of Mrs. Little, also against Jeffries. The appellant had sought recovery jointly and severally against Jeffries, the administrator of the estate of Dr. Little, and Mrs. Ruby Cherry, driver of another automobile which figured to some extent in the sequence of collisions that produced the tragic accident.

In this appeal David's personal representative asserts that the trial court erred in granting a directed verdict absolving Mrs. Cherry and in reading a portion of an instruction to the jury while it was deliberating the issues in the case. As is to be seen in a companion case this day decided, styled Harvin, Adm'r of Estate of Little et al. v. United States Fidelity & Guaranty Company, Ky., 428 S.W.2d 213, Jeffries had liability insurance coverage substantially less than necessary to satisfy the verdict in favor of David.

Jeffries testified that he was following the car operated by Mrs. Cherry as they proceeded westwardly along Watterson Expressway, traveling about thirty-five miles per hour in misting rain on a wet highway surface. Jeffries said that he had been trailing the Cherry car for about three minutes as both cars were in the right or northernmost lane of the two westbound lanes. He said that on a few occasions as he followed Mrs. Cherry he noticed that she "weaved" or "drifted" from the northernmost lane slightly into the inside or southern of the westbound lanes. His evidence

in this regard was emphatically denied by Mrs. Cherry and her mother, who was riding with her. According to Jeffries' version, as he undertook to pass the Cherry vehicle by turning into the southern or inside westbound lane she "drifted" about six inches into that lane causing the right front of the Jeffries' car to collide with the left rear of the Cherry car. Jeffries was unable to give any testimony as to what happened after his car came into collision with the Cherry car. Other evidence in the case tended to show that the Jeffries car went out of control after its contact with the Cherry car and crossed the relatively narrow median separating the two westbound lanes from the two eastbound lanes of Watterson Expressway and collided head-on with the Little automobile being operated in an easterly direction. There was evidence reflecting that the Little car was traveling in the inside or northernmost of the two eastbound lanes just before or at the time of the collision. Automobiles operated by Clarence T. Loeffen and Mrs. Hortense Harris, both traveling east, were involved as an aftermath of the Jeffries-Little collision, but no question respecting their involvement is before us.

Debris and other physical evidence were found at the site in the median strip and in both the eastbound and westbound traffic lanes. No witness was able to minutely pinpoint the exact point of impact between the Jeffries and Little cars, and Jeffries advanced the theory that Little had crossed the median to collide with him, based on the physical evidence.

■ The critical question as to whether the court was correct in directing the verdict in favor of Mrs. Cherry must be measured by indulging the most favorable inferences and construction attributable to the evidence supporting the appellant's theory of the case. Johnson v. Vaughn, Ky., 370 S.W.2d 591; Current v. Columbia Gas of Kentucky, Inc., Ky., 383 S.W.2d 139; Doan v. Griffith, Ky., 402 S.W.2d 855.

We quote pertinent portions from the testimony of Jeffries:

"17 Did you finally attempt to pass her?

A Yes, sir.

18 And what happened when you did that?

A As I started to go around her I pulled partly over into the left lane, and I noticed that she had weaved back over the left side.

19 And what was the speed of your two automobiles at that time to your best knowledge?

A I had speeded up to around 40 miles an hour.

20 And how fast was she going if you know or can give us your best judgment?

A I would say around 35 miles.

21 Now, what happened? Tell the lady and gentlemen of the jury what happened when she weaved over into your lane?

A Well, when she weaved over in my lane our cars collided.

22 What part of your cars collided, Mr. Jeffries?

A The left rear fender of her car and the right front of mine.

23 And then what happened?

A I do remember of braking my car, and after that I don't remember anything else.

24 Was this a severe impact that you had with the rear of her car or not?

A I couldn't say honestly."

*   *   *   *   *   *

"109 Now, as you started to go around her and she was maybe six inches over that line and your car was about six feet wide and you saw that she had been weaving backwards and forwards, did you give yourself some leeway and pull quite a bit to the left to be sure you would miss her?

A I don't really remember.

110 When you actually hit her, part of your automobile was to the right of the line that separates those two lanes headed west, wasn't it?

A I don't know.

111 Do you know how much of it was actually to the right of the line that separates the two lanes?

A I can't honestly say, but I thought I had my car mostly in the left lane.

112 Mostly in the left lane?

A Yes. I don't feel like it was entirely.

113 All right. Now, she did not decelerate, did she?

A Not that I know of."

*   *   *   *   *   *

"121 Mr. Jeffries, when you started to pass Mrs. Cherry how far from that white line was her automobile? How far to the right or north of that line was it?

A As I started to pass her?

122 Yes, sir.

A I can't honestly say.

123 Was it more than a foot or two?

A Looked like it was just about a foot to me, the best I remember.

124 Did she come over suddenly as you started to pass or gradually drift over?

A Seemed like she kind of gradually drifted over."

Photographs of the Cherry car disclosed that the left taillight and left rear fender were substantially damaged. The trunk lid is shown to have been sprung out of position. In short, the impact between the Jeffries and Cherry cars appears to have

been substantially more severe than it would have been if the collision between those two vehicles had occurred as recounted by Jeffries. It is significant that Jeffries characterized the movement of the Cherry car as a gradual drifting as he started to pass rather than a sudden change of course on her part. When it is recalled that Jeffries said that Mrs. Cherry did not slacken her speed at any time, it is pointedly incredible that she could have gradually drifted six inches into the inside or left lane during the scant interval required for the front of Jeffries' car to reach the rear of the Cherry car. This conclusion is strengthened when it is remembered that Jeffries was in such an initial period of passing that the right rear of his car had not yet passed into the inside or passing lane.

■ The appellant calls attention to KRS 189.300(2), 189.350, and 189.380, along with Carnation Company v. Devore, Ky., 252 S.W.2d 860; Weaver v. Caudill, Ky., 375 S.W.2d 712; Hainline v. Hukill, Ky., 383 S.W.2d 353; and Collett v. Taylor, Ky., 383 S.W.2d 692, in support of his argument that it is negligence to turn a vehicle from a direct course on a highway unless the movement can be made with reasonable safety. We do not quarrel with that principle nor with the decisions cited. The difficulty is that there is no evidence of probative value tending to prove that Mrs. Cherry did negligently shift lanes or turn her car from a direct course. It is true that Jeffries testified that Mrs. Cherry crossed the line in his path as he was passing, but the physical circumstances and the equivocal tenor of his testimony destroy the probative value of his evidence. In Kentucky Power Company v. Carter, Ky., 321 S.W.2d 410, we reiterated approval of this proposition:

"When physical situations of matters of common knowledge point so certainly to the truth as to leave no reason for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith." Id. 321 S.W.2d 412, 413.

■ Many decisions of like import are compiled in 8A Kentucky Digest, Evidence, ⊜588. It is our view that the inferences most favorable to Jeffries' theory of the collision between his car and Mrs. Cherry's fall short of the probative quality required to sustain appellant's burden of creating a jury issue respecting Mrs. Cherry's negligence. We are mindful that the precise question at hand is whether Mrs. Cherry was entitled to a directed verdict as to the claim asserted against her by the David estate, but the only evidence of Mrs. Cherry's negligence was that presented by Jeffries and it was not sufficient to create a jury issue. It follows that the trial court correctly granted the directed verdict.

The jury deliberated from about noon until the hour of adjournment at 5:30 p. m. and reported to the trial judge that it was evenly divided and that the possibility of reaching a verdict was doubtful. The trial judge requested the jury to return on the following day to further consider its verdict. After a couple hours' deliberation on the next day, the jury reported that it then stood seven to five and recessed for lunch.

After the recess, the judge inquired of the jury whether further progress had been made at which time one of the jurors propounded a question to the judge, substantially asking "if the Little car was going in their opinion faster than it should have gone and thereby caused the collision to be more severe than it would have been had it not been operated so fast, did that come within this instruction." The instruction referred to was Instruction V pertaining to form Verdict C. The court had submitted form Verdict A, under which the jury ultimately found, on the basis of the sole negligence of Jeffries; form Verdict B submitted the possibility of the sole responsibility of Dr. Little; and form Verdict C submitted the possibility of the joint neg-

ligence of Jeffries and Dr. Little. Instruction V informed the jury that if it believed from the evidence that both Jeffries and Little violated one or more of the duties imposed upon them in other instructions and that such violations so concurred to cause or bring about the accident that "* * * but for the violation of both the collision would not have occurred, you will fill out and sign Verdict C." When the juror asked the judge to respond to his inquiry, the judge advised the juror that he could not with propriety respond. However, the trial judge did then read to the jury Instruction V in its entirety, whereupon a member of the jury replied that the judge had not yet answered the question. Then it was that the judge read the latter portion of Instruction V beginning with "but for the violation of both * * *." Counsel for the David estate and the Little estate then moved for a mistrial on the basis of the court's having read the latter part of the instruction. The court overruled those motions, and shortly thereafter the jury returned its verdict subscribed by nine of its members.

The appellant urges that prejudicial error was committed when the judge read only a portion of Instruction V. It is insisted that this was an emphasis of the "but for" provision of the instruction and definitely indicated to the jury that it could not properly make a finding of joint negligence. We are unable to place that interpretation upon the matter. It is interesting to observe that the juror's inquiry related to a question of the severity of the collision and consequent injuries rather than to the cause of the collision. The court had carefully told the jury that specific answer to its question could not be made, but when pressed did read again so much of the instruction as clearly pointed out that the jury was to explore the matter of *causation* of the *collision*—not the *result* of it—insofar as reaching a verdict that the negligence of Jeffries and Little concurred to cause the accident. We are not persuaded that the jury could or would

have construed the court's actions as expressive of any opinion by the judge as to how the verdict should go.

The judgment is affirmed.

All concur.